Lynn ARMBRUSTER, et al.,
Plaintiffs-Appellants,

v.

Terry QUINN, et al.,
Defendants-Appellees.

No. 80–1739.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 14, 1981.

Decided July 7, 1983.
Rehearing Denied Aug. 19, 1983.

Eric W. Zimostrad (argued), Bay City, Mich., for plaintiffs-appellants.

William C. Potter, Jr. (argued), Detroit, Mich., for defendants-appellees.

Justine Lisser (argued), EEOC, Washington, D.C., amicus curiae.

Before LIVELY and JONES, Circuit Judges, and SILER, District Judge.*

NATHANIEL R. JONES, Circuit Judge.

The appellants appeal the district court's dismissal of their sex discrimination claims brought under Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. § 2000e, *et seq.*, for lack of subject matter jurisdiction. For the reasons set forth below, we reverse the judgment of the district court, in part, and remand for further proceedings.

Lynn Armbruster and Margaret Mayes, former secretaries to T.J. Quinn, the former President of Syntax Corporation (Syntax), sued Quinn, Syntax, Pure Industries, Inc.

* The Honorable Eugene E. Siler, Jr., United States District Court for the Eastern and Western Districts of Kentucky, sitting by designation.

and The Stackpole Corporation (Stackpole). The district court's dismissal was based upon its interpretation of our decision in *Hassell v. Harmon Foods, Inc.*, 454 F.2d 199 (6th Cir.1972) (per curiam) and its finding that manufacturer's representatives of Syntax are not employees under Title VII of the 1964 Civil Rights Act.[1] In evaluating the district court's holding, we shall embark upon an explanation of our prior precedent and detail the proper legal standard for defining employees under the Act.

## I.  FACTS AND PROCEEDINGS BELOW

In 1979, Mayes and Armbruster each were hired and later fired from the position of secretary to T.J. Quinn. The appellants, former employees, allege that each was fired for her unwillingness to submit to or tolerate verbal and physical sexual harassment by T.J. Quinn.

T.J. Quinn was the President of the now-defunct Syntax Corporation. Syntax was a wholly owned subsidiary of Pure Industries, Inc.; Pure is wholly owned by Stackpole. It is not disputed that Syntax alone employed less than fifteen individuals, excluding the manufacturer's representatives, during the twenty calendar weeks preceding this action. Likewise, the parties do not dispute that if Pure is considered to be the employer of Mayes and Armbruster, then the jurisdictional requirement of fifteen employees is satisfied. *See* 42 U.S.C. § 2000e(b).

Plaintiffs presented affidavits tending to show that the operations of Syntax were closely related with those of Pure. Defendants also submitted affidavits which tended to establish the separate existence and operations of these two corporations. The district court held, however, that "on the facts of this case, the Court is not willing to disregard Syntax Corporation as a 'sham' entity in order to consolidate it with its parent corporations to satisfy the Title VII prerequisite of fifteen employees." 498 F.Supp. at 862. The court reasoned that under *Hassell v. Harmon Foods, Inc., supra,* the formal corporate relations between Syn-

tax and its parent were regular and unexceptional, and thus the separate corporate entities would be respected. Upon finding that the parent corporation had nothing more than a possible "awareness" of the identity, positions, and salaries of Syntax employees, the district court opined that there was no "centralized control of labor relations" as required under the four-part test articulated in *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389 (8th Cir.1977).

As to the manufacturer's representatives, the district court adopted the general common law rule for purposes of determining whether an individual is an employee. Under this standard, the court examined the purported control over the means, manner and details of the work performed. The lower court found that evidence of commission payments for accomplished results was an insufficient basis upon which to determine whether an employment relationship existed between Syntax and its manufacturer's representatives under the common law test. The court concluded that the manufacturer's representatives were more akin to independent contractors, than to employees. Thus, upon considering the total number of part-time and full-time persons employed by Syntax, the court determined that the minimum jurisdictional requirement of fifteen employees had not been met; therefore, this claim was dismissed for lack of subject matter jurisdiction.

The district court also dismissed plaintiffs' Fourteenth Amendment claim since no state action was alleged. No assignment of error is premised upon this basis of dismissal; accordingly, this portion of the lower court's judgment is AFFIRMED. We also affirm the lower court's dismissal of Stackpole since it was not charged in the administrative action before the EEOC. *Accord Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974); *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973).

1. The district court opinion is reported at 498    F.Supp. 858.

## II. STANDARD OF REVIEW

▮ The lower court's jurisdictional ruling was based upon written submissions by the parties. In *Welsh v. Gibbs,* 631 F.2d 436 (6th Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981), this Court addressed the standard of proof required for pretrial determinations of subject matter jurisdiction as provided in Rule 12(d) of the Federal Rules of Civil Procedure. Judge Lively's discussion is fully applicable here:

> The burden of establishing jurisdiction is on the plaintiff. However, if the district court determines to decide the issue solely on the basis of written materials, the plaintiff should be required only to make a prima facie case of jurisdiction, that is, he need only "demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss." The district court apparently conclude[s] that the written materials present[s] no disputed questions of fact on jurisdiction and no issues of credibility, . . ., the burden of the plaintiff is relatively slight and the district court must consider the pleadings and affidavits in the light most favorable to the plaintiff.

*Id.* at 438–39 (citations omitted); *accord, First National Bank of Louisville v. J.W. Brewer Tire Co.,* 680 F.2d 1123, 1125 (6th Cir.1982).

The plaintiff must ultimately prove jurisdiction by a preponderance of the evidence. *See McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). In the present case, the jurisdictional question was decided upon briefs supported by affidavits and certain other discovery materials. Since such questions are determined in the same manner as summary judgment issues, *Weller v. Cromwell Oil Co.,* 504 F.2d 927, 929–30 (6th Cir. 1974), the court is required to review the record for facts supporting the initial showing of jurisdiction in order to satisfy itself that the evidence in the record raises no genuine issue as to the existence of jurisdiction. *See Smith v. Hudson,* 600 F.2d 60, 63–65 (6th Cir.), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979).

## III. DISCUSSION

The essential question in this case is whether the plaintiffs' are barred from bringing their claim in federal court by the Title VII jurisdictional requirement of fifteen employees. In reviewing the district court's holding that they have not met the jurisdictional requirement, we must consider two issues. First, we must assess whether Syntax and Pure should be construed as having such substantial identity that they should be deemed a single employer for jurisdictional purposes. If so, then it is uncontested that the fifteen employee requirement will be met. Second, we must analyze the alternative route to a finding that there are fifteen employees. The appellants' claim that, irrespective of the relationship between Pure and Syntax, the manufacturer's representatives of Syntax fall within the meaning of the term "employee" for the jurisdictional requirement.

We do not now resolve any issues of liability. Rather, we merely define the scope of jurisdiction under Title VII to determine whether the district court's dismissal of the appellants' complaint on jurisdictional grounds was proper.

### A. SINGLE v. JOINT EMPLOYER

In *Hassell,* this Court considered whether a parent corporation and its subsidiary should be treated as a single employer for jurisdictional purposes under Title VII.[2] The *Hassell* court upheld the district court's conclusion that the relationship between the parent corporation and the subsidiary was a normal one, and that the subsidiary corporation could in no way be called a "sham" *Id.* at 200. The separate identities of these

---

**2.** At the time *Hassell v. Harmon Foods, Inc.,* 454 F.2d 199 (6th Cir.1972), was decided, the Civil Rights Act of 1964 required an employer to have a minimum of twenty-five employees before being subject to the Act. In 1972, the Act was amended to provide that the employment of fifteen employees subjected an employer to the requirements under the Act. *See* 42 U.S.C. § 2000e(b); *see also* footnote 3, *ante,* and accompanying text.

corporations was evidenced by the fact that the parent would not be liable for the debts of the subsidiary and the subsidiary's recognized independence for tax purposes. Since the corporate entities in *Hassell* maintained a normal separate existence, the parent and subsidiary were considered as separate entities for Title VII jurisdictional purposes. *Id.*

*Hassell* does not set forth an inflexible test.[3] The instant case requires us to refine and apply *Hassell* to a more complex relationship. In formulating a method to assess the propriety of treating a parent and subsidiary as a single employer under Title VII, we look to the purpose of the statute, congressional intent, and the legislative history.

The primary purpose of the Civil Rights Act, and Title VII in particular, is remedial. Its aim is to eliminate employment discrimination by creating a federal cause of action to promote and effectuate its goals. *See, e.g., Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 44–45, 94 S.Ct. 1011, 1017–1018, 39 L.Ed.2d 147 (1974); *Tipler v. E.I. duPont de Nemours and Co.,* 443 F.2d 125, 131 (6th Cir.1971). To effectuate its purpose of eradicating the evils of employment discrimination, Title VII should be given a liberal construction. *Tipler v. duPont de Nemours and Co.,* 443 F.2d at 131. The impact of this construction is the broad interpretation given to the employer and employee provisions. *Quijano v. University Federal Credit Union,* 617 F.2d 129, 131 (5th Cir.1980); *Baker v. Stuart Broadcasting Co.,* 560 F.2d at 391; *see Sibley Memorial Hospital v. Wilson,* 488 F.2d 1338, 1340–42 (D.C.Cir.1973); *see also Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct.

1127, 1132–35, 71 L.Ed.2d 234 (1982) (limitations provisions).

■ The statute defines "employer" with substantial breadth and generality. An "employer" is "a *person* [or any agent of such person] engaged in any industry affecting commerce who has fifteen or more employees...." 42 U.S.C. § 2000e(b). A person "includes one or more individuals ... [or] corporations." 42 U.S.C. § 2000e(a). Very similar definitions of these terms are found in the National Labor Relations Act (NLRA). *See* 29 U.S.C. § 152(1) and 152(2). Since it is clear that the framers of Title VII used the NLRA as its model, *see, e.g.,* 42 U.S.C. § 2000e (referring to the NLRA), *Zipes v. Trans World Airlines, Inc.,* 102 S.Ct. at 1133 n. 11; *Teamsters v. United States,* 431 U.S. 324, 366, 97 S.Ct. 1843, 1870, 52 L.Ed.2d 396 (1977); *Tipler,* 443 F.2d at 129–30, we find the similarity in language of the Acts indicative of a willingness to allow the broad construction of the NLRA to provide guidance in the determination of whether, under Title VII, two companies should be deemed to have substantial identity and treated as a single employer.

■ A second source of aid in interpreting the provisions defining an employer was not available when *Hassell* was decided, but arose when Congress amended Title VII to include the Equal Employment Opportunity Act of 1972. The 1972 Amendment to Section 701(b) of the Civil Rights Act of 1964 served to broaden its reach by subjecting more employers to the Act as a result of the reduction in the statutory minimum number of employees from twenty-five to fif-

---

**3.** Following our decision in *Hassell,* several courts articulated formulations to determine when a parent-subsidiary relationship is not a "normal one" in assessing whether the two will be considered as a single employer for Title VII purposes. Among these cases is *Baker v. Stuart Broadcasting Co.,* 560 F.2d 389 (8th Cir. 1977). In *Baker,* the Eighth Circuit adopted the test used by the National Labor Relations Board to determine the single employer question for purposes of Section 2(2) of the National Labor Relations Act, 29 U.S.C. § 152(2).

The court in *Baker* noted our decision as being in conflict with courts that have em-

braced the NLRB formulation. *See also EEOC v. Cuzzens of Georgia, Inc.,* 15 FEP Cases 1807 (N.D.Ga.1977); *EEOC v. Upjohn Corp.,* 445 F.Supp. 635 (N.D.Ga.1977). Yet district courts of this Circuit have concluded that the NLRB test is not inconsistent with *Hassell,* a position that amicus curiae takes in this case. *See EEOC v. The Wooster Brush Co.,* 523 F.Supp. 1256 (N.D.Ohio 1981) (Contie, J.) and the district court opinion herein, 498 F.Supp. at 862. *See also Mas Marques v. Digital Equipment Corp.,* 637 F.2d 24 (1st Cir.1980).

teen.[4] 42 U.S.C. § 2000e(b). We construe the Amendment's broad reach as an indication of Congress' desire to have the entire Act broadly construed.

When exploring the limits of Title VII jurisdiction, corporate law doctrines may be helpful in our assessment of whether we should treat the defendants as separate corporate entities. However, the most important requirement is that there be sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer. When such a degree of interrelatedness is present, we consider the departure from the "normal" separate existence between entities an adequate reason to view the subsidiary's conduct as that of both. *See Hassell v. Harmon Foods, Inc.,* 454 F.2d at 200; *see also Watson v. Gulf & Western Industries,* 650 F.2d 990, 993 (9th Cir.1981) (Absent special circumstances, parent is not responsible for subsidiary's Title VII violations).

For guidance in testing the degree of interrelationship, we look to the four-part test formulated by the NLRB and approved by the Supreme Court in *Radio Union v. Broadcast Service,* 380 U.S. 255, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965) (per curiam). *Accord Mas Marques v. Digital Equipment Corp.,* 637 F.2d 24, 27 (1st Cir. 1980); *Williams v. Evangelical Retirement Homes of St. Louis,* 594 F.2d 701, 703 (8th Cir.1979); *Baker v. Stuart Broadcasting Co.,* 560 F.2d 389, 392 (8th Cir.1977); *see also EEOC v. American National Bank,* 652 F.2d 1176, 1185 (4th Cir.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 235, 74 L.Ed.2d 186; *cf. Dumas v. Town of Mt. Vernon,* 612 F.2d 974, 980 n. 9 (5th Cir.1980).[5] This Circuit has also adopted this test which assesses the degree of (1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership. *See, e.g. NLRB v. Borg Warner Corp.,* 663 F.2d 666 (6th Cir.) *cert. denied,* 457 U.S. 1105, 102 S.Ct. 2903, 73 L.Ed.2d 1313 (1981). While each factor is indicative of interrelation and while control over the elements of labor relations is a central concern, *see Sheeran v. American Commercial Lines,* 683 F.2d 970, 978 (6th Cir.1982), the presence of any single factor in the Title VII context is not conclusive.

---

**4.** The determination that an employer who employed fifteen employees should be subject to the requirements of 42 U.S.C. § 2000e was a compromise between the proponents and opponents of the original bill that was introduced in the House and Senate. As originally proposed, both the House and Senate version of the bill set the minimum number of employees at eight. *See* H.R. 1746, 1st Sess. 117 Cong.Rec. 212, *Reprinted in* Subcommittee on Labor-Senate Committee on Labor and Public Welfare Legislative History of the Equal Employment Opportunity Act of 1972 (Comm. Print 1972) (hereinafter Legislative History) at 1; S. 2515 Section 2(b) introduced September 14, 1971, 92d Cong., 1st Sess. 117 Cong.Rec. 31702, *Reprinted in Legislative History* at 158.

The Senators who spoke against the eight-employee provision echoed Senator Williams's concerns as to the antidiscrimination principle. *See* Remarks of Senator Allen, 118 Cong.Rec. 2386 (1972), *Legislative History* at 1269; Remarks of Senator Fannin, 118 Cong.Rec. 2409 (1972), *Legislative History* at 1297; *see also* Remarks of Senator Cotton, 118 Cong.Rec. 2391 (1972), *Legislative History* at 1282. However, the opponents would have drawn the balance on the side of the small business, under twenty-five employees. These businesses, often family run, would likely hire the friends and relatives or those of the same ethnicity of the owner. *See* Remarks of Senator Fannin, 118 Cong.Rec. 2409–10 (1972), *Legislative History* at 1298–1300, Remarks of Senator Ervin, 118 Cong.Rec. 3171 (1972), *Legislative History* at 1375. It was argued that small rural businesses were unable to cope with centralized regulation by a bureaucracy such as the EEOC. Remarks of Senator Allen, 118 Cong.Rec. 2389–90 (1972), *Legislative History* at 1277–81.

**5.** The district courts that have adopted the four-part test have increased substantially. *See, e.g., Hague v. The Spencer Turbine Co.,* 28 FEP Cases 450 (M.D.N.C.1982); *Odriozola v. Superior Cosmetics Distributors, Inc.,* 531 F.Supp. 1070 (D.P.R.1982); *EEOC v. Wooster Brush Co.,* 523 F.Supp. 1256 (N.D.Ohio 1981); *Fike v. Gold Kist, Inc.,* 514 F.Supp. 722 (N.D. Ala.1981); *Copley v. Morality in Media, Inc.,* 25 Empl.Prac.Dec. ¶ 31,570 (S.D.N.Y.1981); *Ratcliffe v. Insurance Co. of North Am.,* 482 F.Supp. 759 (E.D.Pa.1980); *Marshall v. Arlene Knitwear, Inc.,* 454 F.Supp. 715 (E.D.N.Y.1978), *vacated on other grounds mem.,* 608 F.2d 1369 (2d Cir.1979) (ADEA).

All four criteria need not be present in all cases and, even when no evidence of common control of labor relations policy is presented, the circumstances may be such that the Title VII single-employer doctrine is applicable. *See Metropolitan Detroit Bricklayers v. J.E. Hoetger & Co.,* 672 F.2d 580, 584 (6th Cir.1982); *Local No. 627, Operating Engineers v. NLRB,* 518 F.2d 1040, 1045–46 (D.C.Cir.1975), *aff'd in relevant part sub nom. South Prairie Construction Co. v. Local 627, Operating Engineers,* 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976); *see generally Soule Glass and Glazing Co. v. NLRB,* 652 F.2d 1055, 1075–76 (1st Cir.1981).

The showing required to warrant a finding of single-employer status has been described as "highly integrated with respect to ownership and operations." *Fike v. Gold Kist, Inc.,* 514 F.Supp. 722, 726 (N.D.Ala. 1981), *aff'd,* 664 F.2d 295 (11th Cir.1982), *quoting Riverside Motor Inn,* 199 NLRB 1033 (1972) *and Operating Engineers, Local 428,* 169 NLRB 184 (1968). The test may also be satisfied by a showing that there is an amount of "participation [that] is sufficient and necessary to the total employment process," even absent "total control or ultimate authority over hiring decisions." *Rivas v. State Board for Community Colleges and Occupational Education,* 517 F.Supp. 467, 470 (D.Colo.1981).

■ From the reasoning of the courts in the above-discussed cases and from our examination of the apparent Congressional intent, we adopt a "facts and circumstances" test which pays heed to the factors found relevant to the question of single-employer status in the National Labor Relations Act context. This test seeks to effectuate the ·broad and remedial purposes of the Act reaffirmed in the comprehensive Equal Employment Opportunity Act of 1972. The appropriate standard is whether, upon review of the circumstances of the intercorporate relationship, Pure exercises a degree of control that exceeds the control normally exercised by a parent corporation which is separate and distinct from the subsidiary corporate entity. When sufficient control is found, the two corporate entities may be given single employer status such that their combined number of employees will be determinative of whether they are subject to Title VII requirements. Having described the degree of control that is necessary, we proceed to evaluate the intercorporate relationship between Pure and Syntax in the light most favorable to the plaintiff. *Welsh v. Gibbs,* 631 F.2d at 438–39. *See also* Part II, *supra.*

Pure is the sole owner of Syntax; therefore, common ownership has been demonstrated. Armbruster and Mayes presented evidence that J. David Quinn was the President of Pure and a director and officer of Syntax. By practice and, allegedly by policy of Pure, J. David Quinn had to authorize all purchases by Syntax which exceeded two hundred dollars. In addition, Pure "handled" Syntax's accounts receivable, provided Syntax with administrative backup, handled Syntax's payroll and cash accounting, and monitored all sales shipments. Moreover, Syntax's bank accounts were located at Pure's headquarters in St. Marys, Pennsylvania, although Syntax's corporate headquarters was in Bay City, Michigan.

Pure received periodic financial reports from Syntax. Syntax's managerial employees used Pure credit cards and aircraft owned by Stackpole. None of the affidavits, however, addressed the method of payment for the charges incurred for such expenses. Pure's personnel also negotiated and "closed" the purchase of Syntax's office building *and* approved all office remodeling. These facts evidence the close interrelation of operations between Pure and Syntax.

On the subject of centralized control of labor, several factors indicate substantial interrelation. J. David Quinn, President of Pure, hired T.J. Quinn as President of Syntax. Syntax's plant manager was hired by "personel employed at [Pure]." Several Syntax employees were transferred from Pure to or from other Pure subsidiaries. Syntax participated in the Pure ERISA plan but paid for its employees' allocated expenses. On review of the record below, we note that Syntax sent a requisition form to Pure for approval to hire Armbruster as

a Syntax secretary. A change notice, also on a Pure form, recited reasons for Armbruster's later termination. In light of the evidence indicating that J. David Quinn, an officer of both Pure and Syntax, approved all purchases by Syntax over $200 and that Pure approved Armbruster's hiring, we believe that plaintiffs are entitled to the inference that pure exercised a significant measure of control over Syntax's hiring decisions and its financial status. Based upon our review of the record, we cannot agree with the court below that the evidence demonstrates no more than an "awareness" by Pure of the hiring and termination decisions of Syntax.

The evidence on the extent of common management is somewhat more sketchy. Apart from the evidence previously discussed, J. David Quinn was the president of both Pure and Syntax for the first seven years that Syntax was owned by Pure. Thereafter, he remained at Syntax's helm as its chairman of the board of directors. At the time of Pure's acquisition of Syntax, a Syntax board member released all decisionmaking powers to Pure. Finally, Syntax's former President and sales manager attested that T.J. Quinn "professed the unity" between Pure and Syntax "indicating that whenever necessary [Syntax] would have the complete cooperation and assistance from [Pure and Stackpole]."

Upon reviewing the evidence before the district court, we find that Armbruster and Mayes met their burden of establishing a *prima facie* case of single employer status to meet the statutory minimum of fifteen employees and vest subject matter jurisdiction with the court. Therefore, we remand with instructions that the court analyze this *prima facie* showing with whatever rebuttal evidence the appellants may appropriately advance and make a determination of the merits of this claim. In the alternative, the court should analyze the appellant's claim regarding the manufacturer's representatives in accordance with this Court's reason-

ing on the application of the economic-realities test as follows.

### B. MANUFACTURER'S REPRESENTATIVES

Appellants also challenge the district court's determination that the manufacturer's representatives are independent contractors and are, thus, not employees for Title VII purposes. Defendants-appellees presented the affidavit of T.J. Quinn which stated that the manufacturer's representatives did not work out of the corporate office, they sold other product lines besides those of Syntax, and they were paid no salary apart from commissions received for goods sold. Moreover, neither their work hours, their timing of sales calls, nor the customers they called upon were controlled by Syntax. Furthermore, Syntax did not withhold income or other taxes from the salary of the manufacturer's representatives. It was these factors which led the district court to conclude that there was no jurisdiction under Title VII.

To begin our analysis, we note that the determination as to whether one is an employee under Title VII is a question of federal law and is to be ascertained through consideration of the statutory language and legislative history of the Act.[6] *E.g., Calderon v. Martin County,* 639 F.2d 271, 272–73 (5th Cir.1981). Title VII defines employee in broad language: "the term 'employee' means an individual employed by an employer ...." 42 U.S.C. § 2000e(f). The legislative history supports the view that Congress intended to cover the full range of workers who may be subject to the harms the statute was designed to prevent, unless such workers are excluded by a specific statutory exception. *See, e.g.,* 42 U.S.C. § 2000e(f) (persons not covered as employees); 42 U.S.C. § 2000e(b) (entities not considered to be employers); 42 U.S.C. § 2000e–2(e)–(j) (special exceptions to illegal practices).

**6.** For this purpose, the source material collecting Michigan state court authorities, cited by the district court is not pertinent upon this

issue of federal law. 498 F.Supp. at 861; *see Dunlop v. Carriage Carpet Co.,* 548 F.2d 139, 145 (6th Cir.1977).

■ In determining the meaning of "employee" as applied to the manufacturer's representative, we shall consider this term as used in the jurisdictional provision of the Act, 42 U.S.C. § 2000e(f), and as it relates to the unlawful practices provision of the Act, 42 U.S.C. § 2000e–2 and e–3. From our analysis of other courts' construction of "employee" in analyzing the anti-discrimination provisions of other statutes, we conclude that at least a similar construction of this term is warranted in Title VII, which was enacted for the sole purpose of eliminating discrimination. Absent a provision *specifically* excluding manufacturer's representatives qua manufacturer's representatives from the coverage of Title VII, we are unwilling to conclude that any individual labeled as such is necessarily denied its protections. Standing alone, the term "manufacturer's representative" has no particular meaning for Title VII purposes. Though the manner in which the parties view the relationship is some evidence as to whether the manufacturer's representative in any particular case will be deemed an "employee" for Title VII purposes, it is not determinative of that question. Rather, one must examine the economic realities underlying the relationship between the individual and the so-called principal in an effort to determine whether that individual is likely to be susceptible to the discriminatory practices which the act was designed to eliminate.

This principle not only applies to the coverage of the antidiscrimination provision of Title VII imposing liability on an employer and protection for the employee, but it necessarily must apply for the jurisdictional scope of the Act. To conclude that one is an employee for the purposes of the antidiscrimination provision and yet to find that he/she is not to be considered as an employee for the purpose of meeting the fifteen employee jurisdictional requirement would frustrate the very purpose of the Act.

First, the term employee is clearly to be given a broad construction under all provisions of the Act. In *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139 (6th Cir.1977), this Court analyzed whether a former employee should be deemed an employee for purposes of the anti-discrimination provision of the

Fair Labor Standards Act (FLSA), 29 U.S.C. § 215(a)(3). The court noted that the term "employee," under the FLSA, had been given the broadest definition ever included in any one act. *Id.* at 143. Using the guidance of Social Security Act, National Labor Relations Act and Title VII decisions and their interpretations of employee thereunder, the court broadly construed the term "employee" under the FLSA to extend to former employees.

The Supreme Court has explained the broad interpretation the term employee should have in *NLRB v. Hearst Publications,* 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944). In that context, the court determined that the construction of the term employee should encompass the history and purpose of the statute. The court further stated that the term employee:

> is not treated by Congress as a word of art having a definite meaning .... Rather it takes color from its surroundings ... [in] the statute where it appears, and derives meaning from the context of that statute, which must be read in the light of the mischief to be corrected and the end to be attained.

322 U.S. at 124, 64 S.Ct. at 857 (citations omitted).

■ Accordingly, we hold that the term employee in Title VII "must be read in light of the mischief to be corrected and the end to be attained." *Dunlop v. Carriage Carpet Co.,* 548 F.2d at 145, *quoting NLRB v. Hearst Publications,* 322 U.S. 111, 124, 64 S.Ct. 851, 857, 88 L.Ed. 1170 (1944). The mischief to be corrected is that discrimination in employment opportunity has been made unlawful by Title VII's violation provisions, 42 U.S.C. §§ 2000e–2 and 3: the end, to rid from the world of work the evil of discrimination because of an individual's race, color, religion, sex or national origin.

■ By analogy, we must construe the term employee as it is used in the Equal Employment Opportunity Act at least as broadly as it has been construed in the anti-discrimination provisions of other statutes. *E.g., Dunlop v. Carriage Carpet Co., supra.* Since this statute has been univer-

sally held to be broadly remedial in its purpose, such remedial effect can be given only upon a broad interpretation of the term employee. We are unpersuaded that the term "employee" was meant in a technical sense, divorced from the broadly humanitarian goals of the Act.

■ Second, with due respect, we cannot agree that Congress meant to inject a limited meaning into the statute by use of the term "employee," "employed," or "employer." We find no tacit dichotomy between employees and "independent contractors" enshrined in Title VII. As noted, the framers of Title VII specifically used the NLRA as their model. In reaction to prior Supreme Court decisions which had mandated the use of an economic realities test for determining whether an independent contractor was an employee for NLRA purposes, see e.g., NLRB v. Hearst Publications, 322 U.S. at 129, 64 S.Ct. at 859. Congress amended the Act to exclude all independent contractors by its terms. This amendment was on the books *before* Title

VII was formulated and yet Congress incorporated no similar provision into Title VII. In that Congress was specifically aware of the judicial construction accorded the term "employee" absent an *explicit* limitation, we now refuse to *imply* such a restriction into the otherwise broad terms of Title VII.[7] We cannot do so especially in view of the broad terms, reasonably precise exceptions and legislative history all directed toward a test of coverage to all those who are in a position to suffer the harm the statute is designed to prevent, unless specifically excluded. Were there a doubt or ambiguity in the matter, we would resolve it in favor of coverage.[8] *See Spirides v. Reinhardt,* 613 F.2d 826, 831 (D.C.Cir.1979).

Accordingly, we hold that the manufacturer's representatives of Syntax are not to be excluded when considering the Title VII jurisdictional requirement of fifteen employees merely because they are manufacturer's representatives. Instead, being mindful of the broad remedial purposes of the Act, consideration must be given to the

---

**7.** *Spirides v. Reinhardt,* 613 F.2d 826 (D.C.Cir. 1979), held that an economic-realities test to determine employee status calls for "an application of general principles of the law of agency" the most important of which is the common law test of "the employer's right to control the 'means and manner' of the worker's performance ...." *Id.* at 831. While the basis for the court's choice of agency principles is not plainly revealed, the footnotes in the decision indicate primary reliance upon cases determined under the National Labor Relations Act, 29 U.S.C. § 152(3), *et seq.* However, the Supreme Court's seminal statement of the economic-realities test in terms of "the mischief to be corrected and the end to be attained," in the NLRB context in *NLRB v. Hearst Publications,* 322 U.S. 111, 124, 64 S.Ct. 851, 857, 88 L.Ed. 1170 (1944), was soon nullified by congressional action in amending 29 U.S.C. § 152(3) to replace the economic-realities test with the common law "right to control" test by inserting a specific exception for any person having the status of an independent contractor. *NLRB v. United Insurance Co. of America,* 390 U.S. 254, 256 & n. 2 (1968); *Boire v. Greyhound Corp.,* 376 U.S. 473, 481 & n. 10, 84 S.Ct. 894, 899 & n. 10, 11 L.Ed.2d 849 (1964). We think it plain that such congressional action makes interpretation of the NLRA subsequent to the amendment not instructive on interpretation of Title VII which contains no such restrictive language. Thus we cannot agree with cases such

as *Spirides,* determined on the basis of the test employed in the NLRA. *See Lutcher v. Musicians Union Local 47,* 633 F.2d 880, 883 (9th Cir.1980) (adopting *Spirides* test); *Mathis v. Standard Brands Chemical Indus., Inc.,* 10 Empl.Prac.Dec. ¶ 10,306 (N.D.Ga.1975); *cf Smith v. Dutra Trucking Co.,* 410 F.Supp. 513 (N.D.Cal.1976), aff'd mem., 580 F.2d 1054 (9th Cir.1978); *cert. denied sub nom., Smith v. United States,* 439 U.S. 1076, 99 S.Ct. 852, 59 L.Ed.2d 43 (1979) (common law test based on NLRB decisions), *but cf. Unger v. Consolidated Foods Corp.,* 657 F.2d 909, 915 n. 8 (7th Cir. 1981), *vacated on other grounds,* 102 S.Ct. 2288, 73 L.Ed.2d 1297 (1982) (citing *Spirides* but holding that a manufacturer's representative is an "employee" under Title VII).

**8.** The court in *Cobb v. Sun Papers, Inc.,* 673 F.2d 337 (11th Cir.1982), refused to import the type of "economic realities" test we have articulated from the FLSA to Title VII due to a perceived absence of a statement in the Act or legislative history such as that made by then-Senator Hugo Black that the FLSA definition of employee be the broadest possible in any one act. *Id.* at 340. We simply cannot accept a judicial limitation upon the coverage of Title VII based upon the lack of a definitive statement by a single legislator, no matter how influential, especially in view of the other indicia we have noted as to comprehensiveness of Title VII's coverage.

economic realities of the relationship between those individuals and the employer. On remand, the district court must undertake to determine whether the manufacturer's representatives are susceptible to the kind of unlawful practices that Title VII was intended to remedy. *See* 42 U.S.C. §§ 2000e–2(a)(2) and 2000e–3(a).[9] If they are so, then they must be included as employees for the purposes of the jurisdictional requirement.

We note that the resolution of this issue is by no means an easy task on the present record and that it may be appropriate for the district court to hold additional hearings on this issue. Similarly, we note that we do not now suggest that the plaintiffs will ultimately prevail on the jurisdictional issues. Rather, we merely have set out the applicable legal principles needed to assess whether the plaintiffs have met the jurisdictional requirement of the Act. Since the district court had not originally employed this analysis, the judgment below is REVERSED and the case remanded for additional proceedings not inconsistent with this opinion.

The judgment below is REVERSED and REMANDED for further proceedings not inconsistent with this opinion.

SILER, District Judge, concurring.

I concur with the ultimate result of this decision, but I respectfully dissent from the part discussing manufacturer's representatives.

I agree with the majority opinion that the plaintiff made out a prima facie case of subject matter jurisdiction sufficient to preclude dismissal before trial. *See First National Bank of Louisville v. J.W. Brewer Tire Co.,* 680 F.2d 1123 (6th Cir.1982); *Welsh v. Gibbs,* 631 F.2d 436 (6th Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981). However, the district court may be able to resolve that issue by a

separate jurisdictional hearing before a trial on the merits.

On the question of determining whether a parent corporation and its subsidiary should be a single employer under Title VII of the Civil Rights Act of 1964, as amended, the district court followed the correct law. Admittedly, for this circuit, it only had the benefit of the decision in *Hassell v. Harmon Foods, Inc.,* 336 F.Supp. 432 (W.D.Tenn. 1971), *aff'd,* 454 F.2d 199 (6th Cir.1972), but it also followed the criteria set out in *Baker v. Stuart Broadcasting Co.,* 560 F.2d 389 (8th Cir.1977), as urged by the majority opinion here.

However, the district court's determination that the manufacturer's representatives are not to be considered employees should not be disturbed. I agree with the majority opinion that the determination of whether one is an employee under Title VII is a question of federal, not state, law. Nevertheless, even though the district court mentioned that under Michigan law the test would be same as under common law, it followed federal law as articulated in *Smith v. Dutra Trucking Co.,* 410 F.Supp. 513 (N.D.Cal.1976), *aff'd mem.,* 580 F.2d 1054 (9th Cir.1978).

In taking this approach, the district court had before it sufficient facts set out in the affidavits to determine whether these manufacturer's representatives were employees. It found that they were independent contractors who worked only on a commission basis and were not controlled by Syntax. By affidavit, Syntax listed its employees for the dates in question. This was not refuted by affidavits by the plaintiff; she only countered it by an affidavit from William Clare who said that the company paid commissions to manufacturer's representatives. He did not say that these representatives were employees.

---

**9.** Without being exhaustive, relevant evidence on the question could include hiring and termination processes and history of the manufacturer's representatives as well as evidence as to payment of these individuals, company-paid benefits or advances. Likewise, evidence of advancement or the opportunity therefore by any manufacturer's representative to a position at Pure or Syntax would be relevant as would evidence of whether the other products sold by the manufacturer's representatives were those of Syntax's parent corporations.

Moreover, the district court followed the correct definition of "employee." Obviously, as the majority opinion declares, Title VII defines "employee" as one "employed by an employer." 42 U.S.C. § 2000e(f). However, I would not adopt the broader "economic realities" test urged by the majority opinion. Instead, the common law concept of "employee" should be used. I agree with the decision in *Cobb v. Sun Papers, Inc.,* 673 F.2d 337 (11th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 163, 74 L.Ed.2d 135 (1982), that there is nothing in the legislative history to suggest that "employee" is to be given the broadest definition possible, as has been done under the Fair Labor Standards Act.[1] This is not to disagree with the learned majority opinion here on policy, as that is up to Congress. Instead, when that body has not spoken, then we should fall back to the common law concept term of "employee" and leave it up to Congress to make the correction, if one is to be made. In doing this, one still must consider the "economic realities of the relationship viewed in light of the common law principles of agency and the right of the employer to control the employee." *Id.* at 341. That seems to be the same approach taken by *Lutcher v. Musicians Union Local 47,* 633 F.2d 880 (9th Cir.1980); *Spirides v. Reinhardt,* 613 F.2d 826 (D.C.Cir.1979); and *Smith v. Dutra Trucking Co., supra.*

Finally, although I disagree with the broader definition of "employee" as adopted by the majority opinion, the distinction between the "economic realities" and the "common law" tests will not be a factor in most Title VII cases.

---

**1.** According to *Hishon v. King & Spalding,* 678 F.2d 1022, 1027 (11th Cir.1982), there was only one remark made about this definition in the Congress, when Senator Clark said "employer" was "intended to have its common dictionary meaning, except as expressly qualified by the Act," citing 110 Cong.Rec. 7216 (Apr. 8, 1964).