Luther W. MILLER, Plaintiff,

v.

ADVANCED STUDIES, INC., Henry Domash, in His Capacity as President of Advanced Studies, Inc., and Individually, and Barry Bruno, in His Capacity as Vice President of Advanced Studies, Inc., and Individually, Defendants.

No. 85 C 10167.

United States District Court, N.D. Illinois, E.D.

May 8, 1986.

Rufus Cook, Barbara J. Revak, Cook Partners, Ltd., Luther Miller, Chicago, Ill., for plaintiff.

Arthur J. Bernstein, Skokie, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Luther W. Miller has brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and under 42 U.S.C. § 1981, alleging that the defendants, Advanced Studies, Inc. and two of its officers, engaged in racially discriminatory employment practices while Miller worked for Advanced Studies as a sales representative. Advanced Studies has filed a motion to dismiss the complaint. Additionally, each party has asked the court to fine the other under Fed.R.Civ.P. 11. For the following reasons, both the motion to dismiss and the motions for sanctions are denied.

## FACTS

The complaint alleges the following facts, which the court takes as true for purposes of a motion to dismiss. *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). Advanced Studies, Inc., an Illinois corporation headquartered in Chicago, sells *The New Standard Encyclopedia, Child Horizons* (a children's reference book), bibles, dictionaries, and other publications. Advanced Studies engages sales representatives throughout the United States to make the sales contacts and actual sales transactions.

Luther W. Miller, a black man, was employed by Advanced Studies as a sales representative and district manager from March, 1979 to December, 1981 and again from January, 1983 to January, 1985. While employed by Advanced Studies, Miller maintained one of the highest annual sales volumes of all the sales representatives. During the 1983 to 1985 employment period, Advanced Studies paid Miller a commission of 15% of the total sales price of $599 for each encyclopedia set sold, i.e., $90 per order. However, during this same period, Advanced Studies paid their white sales representatives an average commission of 45% per order. Additionally, Advanced Studies authorized its white sales representatives to sell *Child Horizons,* bibles, and other publications but would not extend the same opportunity to Miller. Finally, Miller claims that Advanced Studies authorized the white sales representatives to award their customers with "premium units" that stimulated additional purchases of *New Standard Encyclopedia* publications, but denied Miller the opportunity to offer the same incentives to his customers. Miller alleges that Advanced Studies mistreated him solely because of his race.

Miller further alleges that Advanced Studies's discriminatory employment practices denied him the opportunity to sell other *New Standard Encyclopedia* publications, which resulted in a decrease in the total sales per order. Also, Miller was allegedly denied the opportunity to enhance his sales package with "premium units" which further depressed his already disproportionate commission percentage. He resigned on January 17, 1985.

On April 17, 1985, Miller filed a charge with the Equal Employment Opportunity

Commission (EEOC) against Advanced Studies alleging racial discrimination in Advanced's employment practices. On November 22, 1985, the EEOC issued a "right to sue" letter, and Miller subsequently filed his complaint with this court.

Advanced Studies now seeks dismissal of the complaint because (1) it does not allege that Miller filed a timely charge with the appropriate State agency; (2) Miller's compensation and other conditions of employment were actually based on the quality of his work; and (3) Miller's status with Advanced Studies was as an independent contractor rather than an employee. Advanced Studies also asks that sanctions be imposed on the plaintiff because both Miller and his counsel knew before filing the complaint that Miller was an independent contractor and not an Advanced Studies "employee" as defined in Title VII. Defendant supports this assertion by stating that Miller signed a contract in 1979 confirming the independent contractor status, a copy of which was attached to defendant's motion. The defendant also offered other correspondence between the plaintiff and the defendant as further support for its independent contractor theory. Plaintiff responded with his own motion for sanctions on the defendant.

## DISCUSSION

■ The court cannot grant a motion to dismiss for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Hishon v. King & Spaulding*, 467 U.S. 69, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984). Facts need not be set out in detail; they need only outline the claim for

relief. *See B. Doe, M.D. v. St. Joseph's Hospital of Fort Wayne*, 788 F.2d 411, 414 (7th Cir.1986). Additionally, on a motion to dismiss for failure to state a claim, we can consider only the factual allegations of the complaint. *Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 198 (7th Cir.1985). While no motion for summary judgment was filed, both parties did submit exhibits attached to their memoranda. At least some of these exhibits could constitute matters outside the pleadings sufficient to convert a 12(b)(6) motion into a motion for summary judgment under Fed.R.Civ.P. 12(b). *See, e.g., Milwaukee Typographical Union No. 23 v. Newspapers, Inc.*, 639 F.2d 386, 390–92 (7th Cir.), *cert. denied*, 454 U.S. 838, 102 S.Ct. 144, 70 L.Ed.2d 119 (1981). We consider the motion to dismiss under Rule 12(b)(6) without referring to the exhibits and also as a motion for summary judgment with reference to the exhibits.

■ Advanced Studies's first argument in support of its motion to dismiss is that Miller failed to allege in his complaint that he filed a timely charge with the appropriate Illinois agency before filing his EEOC charge as required under 42 U.S.C. § 2000e–5(c).[1] *See Martinez v. United Auto, Aerospace & Agricultural Implement Workers of America, Local 1373*, 772 F.2d 348, 350 (7th Cir.1985) (discussing the state deferral requirements). It is true that Miller's complaint does not mention that he filed a charge with the Illinois Department of Human Rights. We do not know if plaintiff did not file at all or merely failed to allege the state filing but did do it. In any event, it does not matter as this argument is similar to the one this court rejected in *Zewde v. Elgin Community College*, 601 F.Supp. 1237 (N.D.Ill.1984). If Miller had not filed his charge with the

---

1. 42 U.S.C. § 2000e–5(c) provides:

In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute

criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated....

state agency at all, it still would not bar this suit since the EEOC automatically refers charges to the state agency for initial consideration in "deferral" states like Illinois. *Id.* at 1240–41; *see also Bilka v. Pepe's Inc.*, 601 F.Supp. 1254, 1256 n. 1 (N.D.Ill.1985); *Stoecklein v. Illinois Tool Works Corp.*, 589 F.Supp. 139, 144 n. 7 (N.D.Ill.1984). Thus, failure to mention the filing of a state agency charge does not bar the complaint.[2]

■ Defendants argue next that Miller's commissions were directly related to the quality of his work as compared with that of the other sales representatives. Defendants rely on 42 U.S.C. 2000e–2(h).[3] This motion clearly lacks merit. First, this is obviously a question of fact, which Advanced has not supported with evidence. Moreover, compensation based on quality of work is a defense to a Title VII complaint, *see, e.g., Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277, 1281 (7th Cir.1977); *Flowers v. Abex Corp.,* 580 F.Supp. 1230, 1233 (N.D.Ill.1984) (relative inferiority goes only to defendant's articulation of a nondiscriminatory reason for treatment, not to plaintiff's prima facie case), and thus need not be anticipated in a complaint. The defendants may have legitimate nondiscriminatory reasons for the commission percentage and the other disparate conditions of employment that Miller lists in his complaint; however, those reasons must be presented either at trial or on summary judgment following discovery; and they must be based on *evidence,* not on the unsupported statements that Advanced now offers.

Advanced next argues that Miller was an independent contractor rather than an Advanced Studies employee and as such cannot recover under Title VII.[4] Advanced offers little factual support and no authority for its claim except to assert this conclusion. Of course, Miller alleges in his complaint that he was an employee of Advanced Studies. The language of a statute simply says " 'employee' means an individual employed by an employer." 42 U.S.C. § 2000e(f).

■ We need not decide now whether Miller was an "employee" under Title VII because that question is fact-bound and cannot be determined from the face of the complaint. The courts have taken differing approaches to the question. *See Mares v. Marsh,* 777 F.2d 1066, 1067 n. 1 (5th Cir. 1985) (summarizing the cases). One line of cases, led by *Spirides v. Reinhardt,* 613 F.2d 826, 831–32 (D.C.Cir.1979), analyzes the "economic realities" of the work relationship, drawing guidance from common-law agency principles. Another line, led by *Armbruster v. Quinn,* 711 F.2d 1332, 1340–42 (6th Cir.1983), also uses what it calls an "economic realities" test, but eschews common law agency principles in favor of a very broad inquiry into

the economic realities underlying the relationship between the individual and the so-called principal in an effort to determine whether that individual is likely to be susceptible to the discriminatory practices which the act [Title VII] was designed to eliminate.

711 F.2d at 1340. The Seventh Circuit has sent inconsistent signals on the issue, but appears to have joined the *Armbruster*

---

2. This holding is consistent with *Proffit v. Keycom Electronic Publishing,* 625 F.Supp. 400, 405 (N.D.Ill.1985), which Advanced relies upon and which follows our holding in *Zewde. Proffit* differs from *Zewde* later in the opinion when it discusses the proper limitations date for a state filing. Advanced has raised no limitations defense here, and, in any event, the charge appears to have been filed within 180 days of the discriminatory conduct. Thus, we need not discuss that part of *Proffit* which differs from *Zewde.*

3. 42 U.S.C. § 2000e–2(h) provides in relevant part:
Notwithstanding any other provision of this title, it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions of employment pursuant to ... a system which measures earnings by quantity or quality of production ....

4. Miller's claim under 42 U.S.C. § 1981 is not affected by this employee/independent contractor distinction.

camp. *Unger v. Consolidated Foods Corp.*, 657 F.2d 909, 915 n. 8 (7th Cir.1981), *vacated on other grounds*, 456 U.S. 1002, 102 S.Ct. 2288, 73 L.Ed.2d 1297 (1982), applied an "economic realities" test while citing *Spirides*. *EEOC v. Dowd & Dowd, Inc.*, 736 F.2d 1177, 1178–79 (7th Cir.1984) did the same while citing *Armbruster*. Most recently, in *B. Doe*, 788 F.2d at 421–425 & n. 28, the Court cites *Armbruster* and appears to use the broader analysis suggested by that case. What is clear from all of these cases is that no matter what test applies, a plaintiff's status as an "employee" under Title VII can be determined *only* upon careful analysis of the myriad facts surrounding the employment relationship in question. This cannot be done from the face of the complaint, unless the complaint happens to allege facts which clearly preclude the possibility that the plaintiff is an "employee". Such is not the case here. Thus, Advanced's motion to dismiss is denied as premature.

⬛ Even if we were to consider the exhibits submitted by the parties, we could not resolve this factual issue, and we would therefore deny the "converted" summary judgment motion. Miller's contract with Advanced, Advanced's Exhibit A, which says Miller is an independent contractor, is marginally relevant, since it covers the time period of 1979–81, rather than the one in issue, 1983–85. But assuming the terms of the later relationship were the same as those of the earlier one, the written contract is still not dispositive. The above cases make clear that a job title or terms in a contract, such as "John Doe is an independent contractor," provide just one factor out of many to consider. *See, e.g., Unger*, 657 F.2d at 915 n. 8 (a "manufacturer's representative" was an "employee" even though contract called her an "independent contractor"). Advanced's Exhibit B is a self-serving letter from its attorney,

which is not competent evidence for trial or summary judgment. Exhibits C and D, which are letters written by Miller, do not present enough facts to resolve the issue at the summary judgment stage. Advanced presents no other evidence about its relationship with Miller. Put simply, Advanced has fallen woefully short of carrying its burden under Rule 56 of establishing that no genuine issue of fact exists on the "employee/independent contractor" issue.

For the above reasons, the motion to dismiss is denied. The Rule 11 motions are denied as well.[5] The court will rule on Miller's counsel's motion to withdraw at the next status hearing. It is so ordered.

---

**5.** We reserve ruling on both parties' motions for sanctions, which on the surface appear to be scant of legal support. *Both side's* attorneys should spend less energy slinging mud at each other and (1) spend more time researching the legal issues involved in a motion which will occupy the court's time; and (2) try to *cooperate* with each other to resolve this case either by settlement or trial. Any sanctions award in this case will be assessed directly against the attorneys and not their clients. We do not preclude the possibility of eventually granting *both* sanctions motions.