**Lance GRAVES, Plaintiff,**

v.

**WOMEN'S PROFESSIONAL RODEO ASSOCIATION, INC., Defendant.**

Civ. No. 88–2092.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

March 14, 1989.

Debra Armstrong–Wright, Pryor, Barry, Smith & Karber, Fort Smith, Ark., for plaintiff.

Richard L. Spearman, Thompson, Paddock & Llewellyn, Fort Smith, Ark., for defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This is a case in which the plaintiff, Lance Graves, claims that the defendant, the Women's Professional Rodeo Association, Inc. (WPRA), discriminated against him by reason of his sex. The case is brought pursuant to 42 U.S.C. § 2000e–5, 42 U.S.C. § 1985(3), and Article II, Sections 2 and 3 of the Arkansas Constitution. The court has jurisdiction of the matter by reason of the provisions of 28 U.S.C. § 1343.

*Facts*

The facts underlying the cause of action are essentially undisputed. The plaintiff is a 19–year–old male who has engaged in barrel racing for a number of years. The WPRA is a nonprofit association which organizes female rodeo contestants and sanctions rodeo events. Membership in the association is limited to women. *Women's Professional Rodeo Association, 1988 Official Rule Book, By–Laws*, 1.1.1. The by-laws are comprehensive and cover *inter alia*, membership participation in rodeo events, disciplinary procedures, and procedures for the rodeos.

The WPRA sanctions approximately 650 rodeo barrel races each year. The members choose the rodeos in which they wish to compete. In fact, the WPRA has no requirements about which rodeos the members compete in, or how few or many they enter. The WPRA does not pay any of the expenses incurred by a competing member. The only income received by a contestant is the amount of prize money she wins. Each year a member becomes the World Champion Barrel Racers. The champion is determined according to the cumulative amount of money won during the calendar year at any WPRA approved contest. *By–Laws,* 14.1.1–14.1.2.

The plaintiff alleges he has been denied membership to the WPRA because of his sex. He contends that the denial of membership on the basis of sex is prohibited by Title VII. Plaintiff contends that WPRA, by denying him membership, has deprived him of the opportunity to earn a living in his chosen field, *i.e.* professional rodeo barrel racing.

The case is before the court on defendant's motion for summary judgment. In its motion the defendant contends it is not an employer within the meaning of Title VII. Next, defendant asserts that actions relating to employment discrimination cannot be maintained under 42 U.S.C. § 1985(3) citing *Great American Federal Sav. & Loan Assoc. v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). Finally, defendant requests dismissal of the pendent state law claims.

*Discussion*

Title VII was enacted to deal "with the essential unfairness of employment discrimination." *Spirt v. Teachers Ins. & Annuity Ass'n,* 691 F.2d 1054, 1060 (2d Cir. 1982), *vacated,* 463 U.S. 1223, 103 S.Ct. 3566, 77 L.Ed.2d 1406 (1983). Section 2000e–2(a) makes it unlawful for an employer to engage in employment discrimination based on race, color, religion, sex or national origin. 42 U.S.C. § 2000e–2(a). The existence of an employer-employee relationship is essential to a Title VII cause of action. This relationship is applicable in two separate contexts. First, Title VII by its terms applies only to "employers," "employment agencies," and "labor organizations." 42 U.S.C. § 2000e(b)–(d). The term "employer" is defined as follows:

> The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar years and any agent of such a person....

42 U.S.C. § 2000e(b).

Under Title VII "employee" is defined simply as an individual employed by an employer, 42 U.S.C. § 2000e(f). The determination of who is an employee "under Title VII is a question of federal law and is to be ascertained through consideration of the statutory language and legislative history of the act." *Armbruster v. Quinn,* 711 F.2d 1332, 1339 (6th Cir.1983); *Calderon v. Martin County,* 639 F.2d 271, 272–73 (5th Cir.1981). Thus, Title VII is *inapplicable* unless the defendant has the requisite number of qualified employees for Title VII coverage.

Second, once an employer is covered by the act, Title VII protection extends to any aggrieved individual without regard to the existence of a traditional employment relationship. *See* 42 U.S.C. § 2000e–2(a)(1). This concept is considerably broader than the first and extends Title VII remedies to potential applicants as well as former employees. Title VII prohibits a covered employer from exploiting "circumstances peculiarly affording it the capability of discriminatorily interfering with an individual's employment opportunities with another employer, while it could not do so with respect to employment in its own service...." *Sibley Memorial Hospital v. Wilson,* 488 F.2d 1338, 1341 (D.C.Cir.1973). Thus, it is important to emphasize that "there must be a relationship of some kind, actual or potential, *with some employer,* since the discrimination forbidden relates to the field of employment." Larson, *Employment Discrimination* § 5.21 at 2–9 (1988). This concept focuses on the relationship necessary to maintain a Title VII action.

In the case at bar, defendant asserts it is not an "employer" within the meaning of Title VII. In fact, defendant asserts that for the years 1987 and 1988, the WPRA had only two employees who could be counted for Title VII jurisdictional purposes. Plaintiff does not appear to dispute the number of traditional employees of the WPRA but instead argues that the association's members should be deemed employees. Plaintiff states although the relationship of the WPRA and its members is not the typical or normal employer/employee relationship, nevertheless, the WPRA exercises such pervasive control over the means and manner of work of its members that it falls within the purview of Title VII.

In this instance, plaintiff relies on the same "relationship" in both contexts discussed, *supra, i.e.* the relationship of the members to the association is relied on to meet both the jurisdictional number of employees test and to form the employment-type relationship between the claimant and the employer. It has been frequently noted that "Title VII of the Civil Rights Act of 1964 is to be accorded a liberal construction in order to carry out the purposes of Congress to eliminate the inconvenience, unfairness and humiliation of discrimination. (citations omitted). Such liberal construction is also to be given the definition of 'employer.'" *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389, 391 (8th Cir.1977) (standard to be employed in determining whether consolidation of separate entities is proper).

■ In light of the foregoing it is clear the inquiry as to the existence of Title VII coverage requires a two-part analysis. The claimant must first demonstrate that the defendant is a covered employer within the meaning of Title VII, thus, conferring subject matter jurisdiction on the court. After that is determined, and only if it is determined affirmatively, the claimant must demonstrate the existence of an employment-type relationship which he alleges is being unlawfully interfered with by the defendant. As previously noted, Congress has prohibited an employer "from exerting any power it may have to foreclose, on

invidious grounds, access by any individual to employment opportunities otherwise available to him." *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338, 1341 (D.C. Cir.1973). It is the second part of the analysis that has generated a large amount of litigation. *See for example Spirt v. Teachers Ins. & Annuity Assoc.*, 691 F.2d 1054, 1063 (2d Cir.1982); *Spirides v. Reinhardt*, 613 F.2d 826, 831 (D.C.Cir.1979); *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C.Cir.1973); *Pao v. Holy Redeemer Hospital*, 547 F.Supp. 484, 494 (E.D.Pa.1982); *Puntolillo v. New Hampshire Racing Commission*, 375 F.Supp. 1089 (D.N.H.1974).

Plaintiff cites and relies on *Spirt, Spirides, Sibley, Pao, Puntolillo, supra,* for the proposition that the WPRA is an employer. However, in each of those cases it was undisputed that the defendant was a covered employer. *Armbruster v. Quinn*, 711 F.2d 1332 (6th Cir.1983), is on point and discusses whether manufacturer's representatives should be counted toward the jurisdictional requirement of fifteen employees.

The court in *Armbruster* applied the economic-realities test in determining whether the representatives were employees. In so doing, the court concluded that it was necessary to "examine the economic realities underlying the relationship between the individual and the so-called principal in an effort to determine whether that individual is likely to be susceptible to the discriminatory practices which the act was designed to eliminate." *Armbruster*, 711 F.2d at 1340. The court further concluded:

This principle not only applies to the coverage of the antidiscrimination provision of Title VII imposing liability on an employer and protection for the employee, but it necessarily must apply for the jurisdictional scope of the Act. To conclude that one is an employee for the purposes of the antidiscrimination provision and yet to find that he/she is not to be considered as an employee for the purpose of meeting the fifteen employee

jurisdictional requirement would frustrate the very purpose of the Act.

*Id.*

This conclusion by the *Armbruster* court that the antidiscriminatory provisions and the jurisdictional provision should be treated alike ignores the different terminology of the provisions. The jurisdictional provision requires an employer to have in its employ fifteen or more "employees." 42 U.S.C. § 2000e(b). Whereas, the antidiscriminatory provision refers by its terms not only to employees but additionally makes it unlawful to discriminate against "any individual." Specifically, 42 U.S.C. § 2000e–2(a)(1)–(2) provides:

Employer practices

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

Thus, it is possible for some individuals to be protected by the act despite the fact they could not be counted for jurisdictional purposes. The clearest example of this is part-time employees who do not work a sufficient number of hours or weeks to meet the requirements of 42 U.S.C. § 2000e(b) but who could seek redress under Title VII if the employer had 15 other employees who could be counted. Other situations may arise where an "individual" who cannot be termed an employee of the defendant is nevertheless entitled to the protections of Title VII. In fact, such a situation existed in *Sibley* and *Pao. Sibley Memorial Hospital v. Wilson,* 488 F.2d 1338 (D.C.Cir.1973) (Hospital refused to refer a male private duty nurse to female patients requesting a private nurse); *Pao v. Holy Redeemer Hospital,* 547 F.Supp. 484 (E.D.Pa.1982) (Doctor denied hospital staff privileges).

■ In the case at hand, the defendant is a voluntary association whose members pay dues. The WPRA does not pay wages, withhold taxes, or provide insurance. The WPRA has a comprehensive set of rules and regulations that are to be followed by members who wish to compete in a particular contest. The WPRA cannot tell its members when and where to participate. Rather the members elect when to compete. This association differs little from numerous other associations, *i.e.* golfing associations, bowling associations, etc. The members of the association who compete agree to abide by the association's rules. In other words, the competing members gree to "play by the rules."

Plaintiff asserts defendant should be deemed an "employer" because of the pervasive control asserted over contestants. Although control is an important aspect to be considered it cannot be the sole factor. For instance, a licensing board has the power to deny an applicant the ability to earn a living at his chosen profession. The board by its very existence has complete control over access to the job market. Despite this control such boards have consistently been held not to be employers. *See Haddock v. Board of Dental Examiners,* 777 F.2d 462 (9th Cir.1985); *Woodard v. Virginia Bd. of Bar Examiners,* 598 F.2d 1345, 1346 (4th Cir.1979) (per curiam); *Tyler v. Vickery,* 517 F.2d 1089, 1096 (5th Cir.1975), *cert. denied,* 426 U.S. 940, 96 S.Ct. 2660, 49 L.Ed.2d 393 (1976); *National Org'n for Women v. Waterfront Com'n,* 468 F.Supp. 317, 320 (S.D.N.Y.1979). In light of the above, we find that Title VII, by its own terms, does not apply to the WPRA.

■ Even if the court had found defendant to be a covered employer, plaintiff could not have met the second prong of the test. The existence of an employment-type

relationship is of crucial significance for those seeking to redress alleged discriminatory actions under Title VII. As we noted previously, this concept is broader than the customary employment relationship. However, plaintiff must demonstrate interference with at least a potential employment relationship. Here the only interference alleged is plaintiff's inability to participate in a competition for prize money. As such, plaintiff has not shown the existence of an employment-type relationship. Thus, plaintiff is not an individual protected by Title VII.

Defendant next asserts plaintiff cannot maintain an action relating to employment discrimination under 42 U.S.C. § 1985(3). Plaintiff does not appear to contest this as he has failed to address this issue in his briefs. In any event, defendant is clearly correct in light of *Great American Federal Sav. & Loan Assoc. v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979).

Finally, defendant asserts plaintiff's claims brought under the Arkansas Constitution cannot be maintained if the federal claims are dismissed. The doctrine of pendent jurisdiction emanates from *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Pendent jurisdiction exists when there is a claim "arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority...." *United Mine Workers*, 383 U.S. at 725, 86 S.Ct. at 1138. "Without the existence of a substantial federal claim, no federal pendent jurisdiction over the non-federal claim exists." *Kimbrough v. Arkansas Activities Ass'n.*, 574 F.2d 423, 427 (8th Cir.1978).

In the absence of an independent basis of jurisdiction, "when the federal claim drops out before trial, and a complete trial of the facts would be necessary to determine, the state claim, the federal court should not proceed with such a trial." *Curtis v. Sears, Roebuck and Co.*, 754 F.2d 781, 785 (8th Cir.1985). In the present case there does not appear to be an independent basis for jurisdiction. Defendant has asserted

that diversity of citizenship does not exist and plaintiff has not contested this. For this reason, the court is without jurisdiction to retain the pendent state law claims. An order in accordance with the above will be entered concurrently.