**Patricia NORMAN, Plaintiff,**

**v.**

**Dr. Donald LEVY, Tyra Cosmetics, Inc., and Lynn Jahncke, Defendants.**

**No. 90 C 128.**

United States District Court, N.D. Illinois, E.D.

July 2, 1991.

Donald G. Weiland, Chicago, Ill., for plaintiff.

Norman P. Jeddeloh, Steven Pascal Gomberg, Michael Alan Kraft, Siegan, Barbakoff & Gomberg, Chicago, for defendants.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

Patricia Norman (Norman) filed suit against Dr. Donald Levy, Tyra Cosmetics, Inc., and Lynn Jahncke (collectively, Tyra), claiming, *inter alia,* that she was the victim of sex discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* Tyra moved to dismiss Norman's Title VII claim for lack of subject matter jurisdiction, on the ground that Tyra had never employed fifteen or more employees for twenty or more weeks of the calendar years relevant to Norman's allegations, and that motion has prompted a lengthy personnel audit. Inasmuch as neither side to the dispute had properly framed the relevant issue or presented evidence from which this court could make its own jurisdictional count, we continued Tyra's motion and ordered the parties to submit further evidence in accordance with our memorandum opinion. *Norman v. Levy,* 756 F.Supp. 1060 (N.D.Ill. 1990). Norman and Tyra have submitted their supplemental briefs and additional evidence. Upon due consideration, and for the reasons set forth herein, this court now dismisses Norman's Title VII and pendent state claims for lack of subject matter jurisdiction. After months of counting, we cannot count to fifteen.

## DISCUSSION

■ As the plaintiff in this case, Norman bears the burden of proving that this court has subject matter jurisdiction over her claim. *Grafon Corp. v. Hausermann,* 602 F.2d 781 (7th Cir.1979). We are not precluded from considering conflicting evidence in making our determination as to whether she has carried that burden:

> "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction— its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial

court from evaluating for itself the merits of jurisdictional claims."

*Western Transport. Co. v. Couzens Warehouse & Distributors, Inc.,* 695 F.2d 1033 (7th Cir.1982) (quoting *Mortensen v. First Federal Savings and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977)); *see Rennie v. Garrett,* 896 F.2d 1057, 1057–58 (7th Cir.1990); *Grafon,* 602 F.2d at 783.

### A. *Omitted Employees*

An employer is not subject to Title VII unless it is "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year...." 42 U.S.C. § 2000e(b). As noted in this court's prior opinion, prerequisite to a counting of employees to determine whether Tyra is a statutory "employer" within the meaning of § 2000e(b) must be a determination that the names of all "employees" have been assembled. *Norman,* 756 F.Supp. at 1062–63. That issue has arisen once again in this supplemental round of briefing. Tyra moves for reconsideration of this court's earlier ruling that William Soma, Lynn Jahncke, and Michael Hamilton were salaried employees of Tyra during some part of 1988 and/or 1989. Norman seeks to add three more names to Tyra's proposed jurisdictional count.

#### 1. Proper Standard Under Title VII

■ Before we can determine whether the persons alleged by Norman to be employees hold that status in fact, we first must determine which standard to apply to the evidence presented. As other courts have observed, Title VII itself is of little help in this endeavor, defining the term "employee" as one "employed by an employer." 42 U.S.C. § 2000e(f). In our recent opinion in *Vakharia v. Swedish Covenant Hospital,* 765 F.Supp. 461 (N.D.Ill. 1991), we were concerned with which standard is appropriate for determining a plaintiff's standing to sue under the antidiscrimination provisions of Title VII, which prohibit employers from engaging in unlawful employment practices against "any individual." 42 U.S.C. §§ 2000e–2(a)(1), (a)(2). In

*Vakharia*, we held that, although a Title VII plaintiff alleging interference with employment opportunities need not have been employed by the defendant, he or she must at least have been engaged in an employment relationship with a third party. As we observed, federal courts have articulated three alternative standards for assessing an alleged employment relationship under Title VII: the common law "right to control" test, *see Smith v. Dutra Trucking Co.*, 410 F.Supp. 513, 516 (N.D.Cal.1976), *aff'd*, 580 F.2d 1054 (9th Cir.1978), the hybrid economic realities-common law control test articulated in *Spirides v. Reinhardt*, 613 F.2d 826 (D.C.Cir.1979), and the economic realities test set forth in *Armbruster v. Quinn*, 711 F.2d 1332 (6th Cir.1983).

Noting that the Seventh Circuit disfavors the pure common law approach, *Vakharia*, at 466, we then discussed the relative merits of the other two standards. The hybrid economic realities-common law control standard requires courts to weigh the "economic realities" of the relationship, with the primary emphasis placed upon the degree of control exercised over the alleged employee. *Spirides*, 613 F.2d at 831–32. Additional factors to be considered, no one of which is determinative, include:

(1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular operation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; *i.e.*, by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Id.* at 832. In contrast, the "economic realities" standard articulated in *Armbruster* is far broader, requiring courts to assess "the economic realities underlying the relationship between the individual and the so-called principal in an effort to determine whether that individual is likely to be susceptible to the discriminatory practices which the act was designed to eliminate." *Armbruster*, 711 F.2d at 1340.

As we observed in *Vakharia*, some confusion has existed as to which approach the Seventh Circuit has adopted. In *Unger v. Consolidated Foods Corp.*, 657 F.2d 909, 915 n. 8 (7th Cir.1981), *vacated on other grounds*, 456 U.S. 1002, 102 S.Ct. 2288, 73 L.Ed.2d 1297 (1982), the Seventh Circuit seemed to adopt the *Spirides* approach to determine whether a Title VII plaintiff was an employee or an independent contractor. Three years later, however, in *E.E.O.C. v. Dowd & Dowd, Ltd.*, 736 F.2d 1177 (7th Cir.1984), the Seventh Circuit applied the economic realities approach of *Armbruster*, stating that a person's status as an employer rather than an employee must be informed by "strong consideration of the economic realities of the employment relationship." *Dowd & Dowd*, 736 F.2d at 1178. We concluded that *Dowd & Dowd* required us to apply the economic realities approach because it was the later precedent. *Vakharia*, at 467.

Our decision was equally informed by the rationales underlying the two approaches. We noted that the District of Columbia Circuit had been asked in *Spirides* to address the employment relationship issue in the context of 1972 amendments to Title VII that had extended the benefits of that statute to "employees or applicants for employment" with the federal government. 42 U.S.C. § 2000e–16(a). Emphasizing Congress' intent to limit the scope of coverage to federal "employees" in contrast to the broad "any individual" standard for plaintiffs suing private employers, the *Spirides* court held that

[i]ndividuals who are independent contractors or those not directly employed by such an employer are not protected [by the 1972 amendments]. Status as an employee is therefore of crucial significance for those seeking to redress al-

leged discriminatory actions in federal employment. *Spirides,* 613 F.2d at 829–30. In contrast, the *Armbruster* approach had been developed with express reference to the antidiscrimination provisions of Title VII, which protect "any individual" harmed by an employer's unlawful employment practices. These differences persuaded us that the broad language of the *Armbruster* standard, which would encompass as a plaintiff anyone "likely to be susceptible to the discriminatory practices which the act was designed to eliminate," *Armbruster,* 711 F.2d at 1340, supplied the appropriately broad standard for determining whether the plaintiff had standing to sue. *Vakharia,* at 467–468.

The question before us in the instant case is whether the Seventh Circuit's apparent embrace of the economic realities approach and our application of it to assess standing necessitates its application to the narrower issue of whether certain persons are to be deemed "employees" for purposes of § 2000e(b). *Armbruster* involved in relevant part the issue of whether manufacturers' representatives should be considered "employees" for purposes of that section; it was for this purpose that the Sixth Circuit articulated its "economic realities" standard. In defining the term "employee" as used in § 2000e(b), however, the Sixth Circuit held that § 2000e(b), with its reference to counting "employees," should be interpreted with the same scope as 42 U.S.C. §§ 2000e–2(a)(1) and (a)(2), which confer standing upon "any individual":

> To conclude that one is an employee for the purposes of the antidiscrimination provision [1] and yet to find that he/she is not to be considered as an employee for the purpose of meeting the fifteen employee jurisdictional requirement would frustrate the very purpose of the Act.

*Armbruster,* 711 F.2d at 1340. We respectfully disagree. As pointed out by a federal district court in the Western District of Arkansas, this conclusion erroneously "ignores the different terminology of the provisions." *Graves v. Women's Professional Rodeo Ass'n, Inc.,* 708 F.Supp. 233, 237 (W.D.Ark.1989), *aff'd,* 907 F.2d 71 (8th Cir.1990). For jurisdictional purposes under Title VII, we are asked to count "employees," not "individuals." While we believe that *Armbruster's* economic realities approach is appropriately broad for purposes of Title VII standing, we believe that the Sixth Circuit erred to the extent that it imported that breadth into its interpretation of §§ 2000e(b) and (f).

The Seventh Circuit's apparent application of the *Armbruster* approach for jurisdictional purposes in *Dowd & Dowd* does not alter our conclusion. The *Dowd & Dowd* panel was required only to make a broad categorical judgment as to whether shareholders in a professional corporation were employers or employees. There was no suggestion that, if not categorized as employers, they were to regarded as anything other than employees to be included in the jurisdictional count. As the instant case reveals, however, that one is not an employer does not *necessarily* mean that one is an countable employee within the meaning of Title VII. Workplace relationships can take on a number of forms, including full-time employee, part-time employee, temporary employee, independent contractor, and volunteer, among others. The *Dowd & Dowd* court was not called upon to make such a fine distinction.

The Seventh Circuit has cautioned against "distorting traditional concepts of employment relationships" in determining who is an employee for purposes of conducting a jurisdictional count under analogous provisions of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 630(b), (f). *Zimmerman v. North American Signal Co.,* 704 F.2d 347, 352 (7th Cir.1983). As appropriate as it may be for serving the remedial intent of the antidiscrimination provisions' broadly-drafted "any individual" language, the economic realities standard of *Armbruster* creates just such a distortion when incorporated

---

1. This statement is itself erroneous. As was previously noted, the antidiscrimination provisions protect "any individual," not "employees."

into the narrower use of the term "employee" in §§ 2000e(b) and (f). For purposes of determining whether one is an "employee" to be included in the jurisdictional count, the hybrid approach of *Spirides,* which was developed specifically to define this narrower term—albeit in a somewhat different context—is the more appropriate standard.

### 2. Tyra's Motion for Reconsideration

In the previous round of briefing, Norman submitted an affidavit in which she asserted that she had been told on various occasions that William Soma, Lynn Jahncke, and Michael Hamilton were salaried Tyra employees. Rather than rebut these averments with evidence, Tyra elected merely to respond with the argument that they were inadmissible hearsay. This court ruled the contents of Norman's affidavit to be admissible admissions of a party-opponent and, because they had gone unrebutted, found that Soma, Jahncke, and Hamilton had been salaried employees during some part of 1988 and/or 1989.

■ Tyra now moves for reconsideration of that ruling, offering as rebuttal evidence the affidavits of Soma, Jahncke, and Hamilton as to the nature of their relationship with Tyra.[2] Norman, of course, insists that this court's earlier ruling should stand. While interlocutory rulings are governed as a general rule by the law of the case doctrine, the Seventh Circuit has recognized the doctrine to be "prudential only," expressing the general tenet that courts are reluctant to reopen what has been decided, rather than acting as a limit on their power to do so. *Christianson v. Colt Industries Operating Corp.,* 798 F.2d 1051, 1056 (7th Cir.1986). Even more important, the Seventh Circuit has recognized that the law of the case doctrine may "be inappropriate to preclude reconsideration of those issues that, because of their intrinsic importance, must be left open for *sua sponte* reexamination in other procedural settings. Indeed, there is authority for the proposition that the issue of subject-matter jurisdiction

is not constrained by law of the case principles." *Id.* In a close case such as this, the employment status issue bears reexamination.

#### a. William Soma

■ The affidavit of William Soma states that he is the founder and president of Tyra, inventor of the product line that bears its name, and primary shareholder in the corporation (Soma aff. ¶¶ 1, 2). He goes on to aver that, although he devotes substantially all of his professional time to Tyra and promotion of its product, he is neither employed by nor receives compensation from the corporation (Soma aff. ¶¶ 4–6). In support of her contention that Soma is a Tyra employee, Norman presents his business card (Norman supp. ex. 5) and a letter signed by Soma welcoming her to Tyra (Norman supp. ex. 9). Norman also presents her own affidavit, in which she avers that, throughout her tenure with Tyra, Soma contacted her almost daily and engaged in day to day operation of the enterprise (Norman supp. aff. ¶¶ 9, 16–18). Nothing Norman presents contradicts Soma's affidavit. Most important, Norman presents no evidence to contradict Soma's assertion that he receives no compensation from Tyra. Instead, she argues that this court should deem Soma an employee because the energy he devotes to Tyra increases the value of his stock in the corporation.

■ Norman argues for a definition of "employee" that goes far beyond the traditional concept of the employment relationship. Soma's efforts are an integral part of the business, but they result from his status as an owner who wishes to increase the value of his property. Traditionally, one who is compensated solely through the increased value of his ownership share of an entity is an owner, rather than an employee; owners are not considered employees within the meaning of Title VII. *See Burke v. Friedman,* 556 F.2d 867 (7th Cir. 1977); *cf. Dowd & Dowd,* 736 F.2d at 1178–

---

**2.** Tyra requests reconsideration pursuant to Fed.R.Civ.P. 60(b)(6). Technically, this rule applies only to final judgments.

79. Upon reconsideration, this court reverses its earlier ruling and deems William Soma not to have been a Tyra employee during the relevant time period.

### b. Michael Hamilton

■ The affidavit of Michael Hamilton states that he was hired as an independent contractor by Tyra to assist in the promotion of the Tyra line. Hamilton avers that as an independent contractor he assisted Tyra in 1988 and, on a more limited basis, in 1989, with establishing its product line at Marshall Field stores in Chicago (Hamilton aff. ¶¶ 5, 7). To the extent Hamilton performed services for Tyra, he did so on his own schedule and without supervision, simultaneously engaging in "other professional endeavors of a remunerative nature" for other organizations (Hamilton supp. aff. ¶ 3). Tyra did not compensate Hamilton as an employee; in exchange for his services, Tyra paid 100% of Hamilton's expenses, including meals, transportation, and housing, but never provided him with any fringe benefits, such as health insurance, sick leave, or medical leave (Hamilton aff. ¶¶ 6–8; Hamilton supp. aff. ¶ 2). Hamilton's averments as to the nature of his compensation are supported by the IRS 1099 forms for 1988 and 1989 attached to his affidavit.

■ In support of her assertion that Hamilton was a Tyra employee, Norman states in her own affidavit that Hamilton is identified as a Tyra vice-president in a promotional videotape, that he assisted her in establishing Tyra's midwest market, and that he on one occasion told her that he was compensated and reimbursed for his expenses (Norman supp. aff. ¶ 8). Whether Hamilton was held out to the world as a Tyra vice-president in promotional material is ultimately irrelevant, however, because Norman presents no evidence to contradict the crucial substance of Hamilton's affidavit. Independent contractors, when they hold that position in substance rather than in name only, are not employees within the meaning of Title VII. *See Zimmerman,* 704 F.2d at 352 n. 4.

### c. Lynn Jahncke

■ Lynn Jahncke also contends that, at least for a time, she performed services for Tyra as an independent contractor rather than as an employee. Her affidavit states that she first began performing services for Tyra in June 1988. From that date through March 3, 1989, she worked for Tyra as an independent contractor, working with plastic surgeons to develop specifications for Tyra products, and recruiting and training Tyra's Illinois sales force (Jahncke aff. ¶¶ 4.6). Jahncke avers that she carried out these duties as she saw fit, setting her own schedule and working without supervision, while simultaneously working for other organizations on a similar basis (Jahncke aff. ¶ 7). She submitted invoices for her services directly to Tyra, which paid her for the time worked. No tax was withheld and Tyra provided Jahncke with no fringe benefits (*Id*). At the end of 1988 and 1989, Tyra forwarded IRS 1099 forms to Jahncke (Jahncke aff. exs.). As of March 3, however, Jahncke became a salaried employee, a change in relationship that is reflected in Tyra's own records. At the end of 1989, Jahncke received an IRS W–2 form showing the amounts paid her as salary and the tax withheld therefrom (Jahncke aff. ¶ 8).

Norman submits nothing to rebut Jahncke's averments other than her own assertion that Jahncke was a Tyra employee in 1988, before Norman herself was hired, and that Jahncke performed "employment duties" on Tyra's behalf (Norman aff. ¶ 8; Norman supp. aff. ¶ 27). Mere legal conclusions, Norman's assertions cannot controvert Jahncke's substantive averments as to the nature of her working relationship with Tyra. Jahncke may be counted as a Tyra employee only to the extent admitted by Tyra in its own records—from March 3, 1989, through the end of that year.

### 3. Additional Employees Suggested by Norman

In response to Tyra's supplemental briefing, Norman now suggests three additional salaried employees whom Tyra allegedly

omitted from its jurisdictional count: Mark Ruzek, Phil Kogak, and Donald Levy. We address each in turn.

#### a. Mark Ruzek

Norman contends that Mark Ruzek was a Tyra employee in 1989, working as a regional manager. In support of her assertion Norman presents her own affidavit, in which she avers that Ruzek participated in meetings with her in Washington, D.C. and operated Tyra's Maryland office, and a copy of a business card containing Ruzek's name along with the title of "Eastern Regional Manager" and a Maryland address—Ruzek's home address, according to his affidavit (Norman supp. aff. ¶ 26; Norman supp. ex. 6; Ruzek aff. ¶ 1). Ruzek avers that he is engaged in "various business pursuits" involving the sale, promotion, and distribution of product lines, of which Tyra is one (Ruzek aff. ¶ 2). Generally, Ruzek sells these products as a distributor or on commission, but is not an employee of the manufacturers (Ruzek aff. ¶ 3). In 1988 and 1989, Ruzek states that he distributed Tyra products in the northeast as an independent contractor; he was unsupervised and carried out his functions on his own schedule (Ruzek aff. ¶¶ 4, 5). He was compensated by commission or by selling the products to retailers and remitting the wholesale price to Tyra; at no time did he receive a salary, wage, or any form of employee benefits from Tyra (*Id.*). Ruzek's affidavit statements support Tyra's claim that his relationship with Tyra was that of an independent contractor. Norman's contention that Ruzek held a titled position with Tyra, and participated in meetings with her, is not probative of the nature of his relationship with Tyra other than to indicate that some sort of relationship in fact existed. Despite her claim that Ruzek operated Tyra's Maryland "office," the fact that the address on his business card is his home address casts doubt on the possibility that such a formal "office" existed. Norman has failed to support her claim that Ruzek should be counted as a Tyra employee.

#### b. Philip Kogak

In her supplemental affidavit, Norman asserts that Phil Kogak "received a salary according to Defendants' documents, and performed employment duties for Tyra" in the second half of 1989 (Norman supp. aff. ¶ 29). Tyra's documentation lists Kogak as a salaried employee in the fourth quarter of 1989 and is supported by Kogak's affidavit to that effect (Kogak aff. ¶ 3). Because Norman provides no evidence to indicate that Kogak was a Tyra employee at any other time, this court will count Kogak as a Tyra employee only to the extent admitted by Tyra—for the three months comprising the last quarter of 1989.

#### c. Donald Levy

Norman contends that Donald Levy, one of the defendants in this case, also should be counted as a Tyra employee. Even if Levy were the critical "fifteenth employee" for purposes of the jurisdictional count, a decision by this court as to his employment status could conceivably affect Tyra's liability as an employer under Title VII. 42 U.S.C. § 2000e-2(a)(1). Because, as stated below, we determine that we are without subject matter jurisdiction in this case regardless of Levy's inclusion in the count, we decline to address the issue of his employment status at this time.[3] *Cf. Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946) (whether complaint states a cause of action on which relief can be granted must be determined only after court assumes jurisdiction).

#### 4. Duration of Employment

Even if this court were to deem each of the above persons to be or have been salaried employees, none except Lynn Jahncke and Phil Kogak could be included in the jurisdictional count. Beyond the necessity of demonstrating to this court's satisfaction that Tyra employed these persons, there remains an equally significant issue that Norman has completely overlooked in

---

**3.** This issue does not arise with regard to Lynn Jahncke because she has been named as a defendant only in those counts asserting pendent state claims.

her briefing: even if we were to find that these persons were salaried employees, Norman still would bear the burden of proving with some element of precision the duration of their employment and accounting for any time periods during which they might not have been on the payroll. As Tyra's records for Lynn Jahncke and Phil Kogak indicate, to conclude that one was a salaried employee during some portion of 1989 does not necessarily mean that one was a salaried employee for all of 1989. With the exception of Jahncke and Kogak (and then only to the extent provided for in Tyra's own records), this alone is sufficient reason to exclude Soma, Hamilton, Ruzek, and Levy from the jurisdictional count.

### B. *The Jurisdictional Count*

■ In our prior opinion we continued Tyra's motion to dismiss for lack of subject matter jurisdiction and requested both Tyra and Norman to submit additional evidence and a new jurisdictional count because, according to our reading of the Seventh Circuit's opinion in *Zimmerman v. North American Signal Co.*, 704 F.2d 347 (7th Cir.1983), neither party had properly framed the relevant issues. Tyra had taken a systematically underinclusive approach, counting salaried employees only when they were present at work or on paid leave, rather than counting them for every day of the week they were on the payroll regardless of whether they actually were at work. Norman had taken a systematically overinclusive approach, simply submitting to the court copies of Tyra's IRS W–2 forms for 1988 and 1989. Based on the evidence submitted by both parties, we were able to determine only that Tyra had had an insufficient number of employees in

1987 to confer subject matter jurisdiction on the basis of that year.

In *Zimmerman*, the Seventh Circuit accepted as a correct interpretation of the ADEA's jurisdictional provisions the defendant employer's contention that an hourly employee is to be counted only on those days that he is either present at work or on paid leave, and that a salaried employee is to be counted for each day that he is on the payroll. Under this approach, an hourly employee who works a 40–hour "week" Monday through Thursday would not be included in a count taken on Friday; if he were the threshold fifteenth employee, therefore, that week would not be counted toward the 20–week jurisdictional requirement. *Zimmerman*, 704 F.2d at 353–54; *see* 1 A. Larson & L. Larson, *Employment Discrimination* § 5.32(b), at 2–43 n. 36. Larson and Larson suggest that the more appropriate approach would be to count persons on the payroll, and regularly employed, rather than the number of people at work on a given day. *Id* at 2–43. Nonetheless, we look to *Zimmerman* for guidance.

In its supplemental briefing, Tyra presents a deliberately over-inclusive count to demonstrate that even on an inflated basis it never had enough employees to be subject to Title VII during either 1988 or 1989. According to the affidavit of Thomas Karam, Tyra's accountant, Karam counted each employee—salaried or hourly—as having worked for the entire work week if that employee worked or was on paid leave any day of that week, regardless of the number of days actually worked (Karam supp. aff. ¶ 2).[4] Karam's calculations, supported by documentary evidence in the form of corporate records and tax filings, demonstrate the absence of subject matter jurisdiction in this case.[5]

---

**4.** Norman erroneously contends that Tyra's method was again underinclusive.

**5.** For 1988, Tyra submitted 1) a schedule of its payroll summary of employees; 2) a schedule of its payroll; 3) a detailed fourth quarter schedule; 4) IRS 941 forms for each quarter; 5) California unemployment tax returns through the third quarter; 6) Illinois unemployment tax returns for the fourth quarter; 7) IRS form 940; 8) employee payroll cards; and 9) IRS W–3 and W–2 forms. For 1989, Tyra submitted 1) a

schedule of its first quarter payroll; 2) a schedule of its second quarter payroll; 3) California unemployment tax returns for each quarter; 4) Illinois unemployment tax returns for each quarter; 5) a schedule of its third quarter payroll; 6) IRS form 940; 7) Wisconsin unemployment tax forms for the fourth quarter; 8) IRS W–3 and W–2 forms; 9) employee payroll cards; and 10) a summary of employee hours worked by day for most of the second and third and part of the fourth quarters.

Tyra's evidence indicates that it employed only two salaried and no hourly employees for the first ten months of 1988 and employed only three salaried and eight hourly personnel in November and December of that year (Karam supp. aff. ¶ 3 and attachment A). Even on this grossly over-inclusive counting method, therefore, Tyra strongly suggests the absence of subject matter jurisdiction as to that year. Similarly, Tyra's evidence for 1989 indicates that, for each week of the first, second and third quarters of that year (39 weeks in all), Tyra employed at most 11 salaried and hourly personnel at any one time (Karam supp. aff. ¶ 4 and attachment B). Having demonstrated that it had employed fewer than fifteen employees for 39 weeks of 1989, Tyra did not present similar payroll schedules for the fourth quarter because, even if Tyra had employees in excess of the jurisdictional threshold for the 13 weeks of that quarter, it still would not have met the 20–week minimum for 1989.[6]

Tyra having adequately suggested the absence of subject matter jurisdiction, the question becomes whether Norman has carried her burden of demonstrating that jurisdiction exists. This court must conclude that she has failed to do so, despite having been provided a second opportunity to make her case. Norman's supplemental briefing fails to address Tyra's jurisdictional count for 1988. With regard to Tyra's jurisdictional count for 1989, Norman neither contests Tyra's data nor presents an alternative count of her own, aside from arguing that the six persons whose status is discussed *supra* should have been included in the jurisdictional count.[7] Having concluded that Tyra did not improperly omit any employees, and having found that—even with a deliberately over-inclusive method—Tyra did not have enough employees for enough weeks to cross the jurisdictional threshold in 1989, we must further

conclude that we have no subject matter jurisdiction over Norman's Title VII claim. Both that claim and her pendent state claims must therefore be dismissed.

## CONCLUSION

Norman's Title VII claim is dismissed for lack of subject matter jurisdiction; accordingly, this court dismisses her pendent state claims as well.

---

**6.** Tyra has, however, submitted unemployment tax returns for the fourth quarter of 1989 that indicate that Tyra employed seven salaried and 23 hourly employees during that 13–week period (Karam Aff. Attachment B).

**7.** Norman does note that Tyra did not produce daily tally sheets for the first quarter and most of the fourth quarter of 1989. There is no

evidence, however, that Norman took any measures to compel production of such records, if they existed, or that such records might have further inflated Tyra's deliberately over-inclusive calculations or contradicted the documentary evidence on which those calculations were based.