Nan S. VICK, Plaintiff,

v.

FOOTE, INC., t/a Foote Tire, Defendant.

Civ. A. No. 3:95cv151.

United States District Court, E.D. Virginia, Richmond Division.

Aug. 1, 1995.

Nan S. Vick, pro se.

Robert P. Geary, Richmond, Virginia, for defendant.

## MEMORANDUM OPINION

PAYNE, District Judge.

Foote, Inc. has moved, pursuant to Fed. R.Civ.P. 12(b)(1), to dismiss the Title VII claims brought by Nan S. Vick ("Vick") for lack of subject matter jurisdiction. Finding that it was necessary to resolve an issue of fact to rule on this motion, the court gave the parties time to discover evidence relevant to the limited jurisdictional question. After taking evidence and hearing argument on July 5, 1995, the court took the motion under advisement. Now, having resolved the factual and legal questions in favor of the defendant, the court grants the Motion to Dismiss the Title VII claims, leaving the Equal Pay Act claim for trial. Additionally, the court finds Vick's state law claims, although perhaps closely related to the Title VII claims, are not part of the same "case or controversy" as that described by the Equal Pay Act claim, the only remaining claim over which this court has original jurisdiction, as required by 28 U.S.C. § 1367(a) for the exercise of federal supplemental jurisdiction. Accordingly, all of the state law claims are dismissed for lack of jurisdiction, as well.

In considering the motion to dismiss the Title VII claims, the question is whether, as 42 U.S.C. § 2000e(b) requires, the defendant had "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year."

### The Applicable Standard

On a motion to dismiss under Fed. R.Civ.P. 12(b)(1), the plaintiff bears the burden to establish subject matter jurisdiction. *See Williams v. United States,* 50 F.3d 299, 304 (4th Cir.1995); *Moir v. Greater Cleveland Regional Transit Auth.,* 895 F.2d 266, 269 (6th Cir.1990) (stating that the plaintiff had the burden to establish subject matter jurisdiction by showing the defendants were subject to federal labor law). When the issue turns on a factual dispute (that is not intertwined with the substantive cause of action), the court may weigh conflicting evidence and resolve the dispute. *See Williams,* 50 F.3d at 304; *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir.1994); *Colonial Pipeline Co. v. Collins,* 921 F.2d 1237, 1243 (11th Cir.1991).

The fifteen-employee minimum at issue in this case is a jurisdictional question that is not "intertwined with the facts central to the merits of the dispute." *See Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982) (holding that such intertwined questions

should be resolved by a proceeding on the merits); *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Plumer v. State of Maryland,* 915 F.2d 927, 932 n. 5 (4th Cir. 1990); *Sierra Club v. Shell Oil Co.,* 817 F.2d 1169 (5th Cir.1987). Thus, the factual dispute here is for the court to resolve. *See Norman v. Levy,* 767 F.Supp. 1441, 1443 (N.D.Ill.1991) (finding that the court could consider conflicting evidence in determining whether the 15–employee minimum was met).

*Haavistola v. Community Fire Co. of Rising Sun, Inc.,* 6 F.3d 211 (4th Cir.1993) is not to the contrary. There, the Court of Appeals reversed the summary judgment granted by the district court, which had found as a matter of law that the plaintiff and other putative employees were not employees of the defendant within the meaning of Title VII. Without mention of the apparent jurisdictional nature of the question, the Fourth Circuit held that the finder of fact should have been allowed to decide whether "benefits received by [defendant] members [were] sufficient to make them employees under Title VII." *Id.* at 221–22. Upon close analysis, however, the decision in *Haavistola* does not preclude a district court from resolving factual disputes related to Rule 12(b)(1) motions in the context of Title VII claims. The defendant in *Haavistola* had moved for summary judgment, and neither the district court nor the appellate court had *sua sponte* questioned its jurisdiction to rule on substantive motions. *See, e.g., id.* at 214, 221–22. Thus, because the issue of Title VII's applicability was raised and considered in the summary judgment context, the case does not speak to the proper approach to jurisdictional questions.

Furthermore, some courts have considered the issue of the plaintiff's employment status, which is not an issue in this action, to be part of the substantive cause of action. *See, e.g., Wheeler v. Hurdman,* 825 F.2d 257, 259 (10th Cir.), *cert. denied,* 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987) ("We find that the determination of whether [the plaintiff] qualifies as an employee under the federal discrimination statutes is both a jurisdictional question and an aspect of the substantive claim in her discrimination action. [Thus,]

the motion was appropriately characterized as a motion for summary judgment."). Under that approach, which appears to have been followed *sub silentio* in *Haavistola,* the jury must determine whether the plaintiff was or was not an employee. There is no such issue here. Instead, the fact dispute relates to the employment status of the owner of the defendant. That is not part of the plaintiff's substantive claim. Rather, it is a fact issue which has only jurisdictional consequences. Hence, it is one appropriately resolved by the court under the traditional rule set forth in *Williams.*

## DISCUSSION

■ The fifteen-employee jurisdictional minimum set by 42 U.S.C. § 2000e(b) must be met in "the current or preceding calendar year." The "current" calendar year, for purposes of 42 U.S.C. § 2000e(b), is the year in which the alleged discrimination occurred. *See Dumas v. Town of Mount Vernon,* 612 F.2d 974 (5th Cir.1980). Because discrimination may have occurred as late as 1994, the year in which Vick terminated her employment with Foote, Inc., the last relevant year is 1994. And, because the parties agree that the number of employees did not begin to approach 15 until August 1993, it is proper to consider evidence of the number of Foote, Inc. employees between August 1993 and December 1994.

### A. The Evidence

Defendant proffers Def. Exs. 1–4, 7, and 8 as the records it submitted to the Virginia Employment Commission that show all of its employees during 1993 and 1994, the "preceding" and "current" calendar years, respectively. Following is a summary of those exhibits:

| Ex. | No. | Quarter Year Ending |
|---|---|---|
| Ex. 4 | 15 employees | 9/30/93 |
| Ex. 3 | 14 employees | 12/31/93 |
| ------End of Calendar Year (1993)------ | | |
| Ex. 2 | 14 employees | 3/31/94 |
| Ex. 1 | 15 employees | 6/30/94 |
| Ex. 7 | 13 employees | 9/30/94 |
| Ex. 8 | 14 employees | 12/31/94 |

This evidence shows that Foote, Inc. had 15 employees for at most 13 weeks in 1993 and again in 1994. Vick is therefore left with the burden to persuade the court that the

company employed an individual not listed in these exhibits. Basing her suspicions on her experience with the company, Vick asserts that William F. Foote ("Foote"), the Vice–President and 60% shareholder of the corporation, was also an employee of Foote, Inc., within the meaning of Title VII, for the entire relevant period. If Foote was not an employee during this time, then the 15–employee minimum is not met.[1]

Vick's entire case on this issue turns on her assertion that Foote received compensation in kind for services which he performed for the company. To establish this point, Vick relies upon checks and other records of payments to Foote from company funds. Plaintiff's Exhibit 12 shows several checks to Foote between November 1993 and September 1994, in even amounts ranging from $200 to $500 and totalling $2000, and purporting to be repayments of loans allegedly made by Foote to the company.

Exhibit 13 is a copy of a check to Foote for $2,000, purporting to be a payment for "contracting services." Foote avers that these services "involved the building of a warehouse for Foote, Inc." and that $2,000 "was the amount that was estimated to pay [sic] a contractor to perform the design services, layout and order services for this warehouse and a fourth bay at" another Foote, Inc. operation. (Foote Affidavit, ¶ 4.)

Exhibit 18 is 162 pages of checks, records of payments, invoices, and receipts, some concerning Foote and some concerning his son, William C. Foote, that show $6,419.88[2] in Foote, Inc. money went to Foote. Vick proposes that all of this money was for personal use and was not reimbursement, but compensation. Much of the money, according to the documents themselves, went to seemingly reasonable business expenses, however (*e.g.*, nails, nail guns, cash for Christmas bonuses, a lawn mower, and truck parts).

Exhibit 19 is more checks and receipts, primarily from the second half of 1993, showing the disbursement of company funds to Foote purportedly for travel expenses, replenishing the petty cash fund, and other miscellaneous expenses. The total of these expenses was $773.10.

Finally, Exhibit 21 shows gas receipts totalling $2,119.35. Vick claims that, during her employment with the company, Foote accepted reimbursements for gas consumed while driving on personal missions.

The parties agree that Foote usually was present at one or the other of the company's two business locations two or three times per week and that he provided some customer services, principally in sales. Vick characterizes the work performed by Foote as substantial while Foote, Inc. argues that it was just the sort of help one would expect from a business owner—coming to work wearing the company uniform, talking to customers, and answering the phones or selling some tires if the need arose. Significantly, though, there appears to be no evidence linking this work with the money which Foote received.

**B. Applying the Test for Employee Status**

In distinguishing between an employee and an independent contractor, the Fourth Circuit approach is clear: "[A]nalyz[e] the facts of each employment relationship under a standard that incorporates both the common law test derived from principles of agency and the so-called 'economic realities' test...." *Garrett v. Phillips Mills, Inc.*, 721 F.2d 979, 981 (4th Cir.1983). "The common-law standard ... emphasizes the importance of the employer's control over the individual," and economic reality suggests which individuals are employees, for purposes of social legislation, by illuminating who is "dependent upon the business to which they render service." *Haavistola*, 6

1. Vick argues that two other employees, Anthony Gordon and Melynda Overton, worked for more weeks than the defendant's exhibits reveal. The evidence in support of these allegations demonstrate, and Vick conceded in oral argument, that even if these two employees did work during the time the plaintiff's evidence suggests, the 15–employee minimum still would not be met unless Foote was also an employee.

2. The total amount of the payments was calculated by Vick, who was asked to provide a statement of the total sums which she contended were paid to Foote.

F.3d at 220. The court finds this test is also helpful in distinguishing between an owner and an employee.

In *Haavistola,* the court explained that the analysis in *Garrett,* to distinguish between an employee and an independent contractor, "focused on the level of control the putative employer exercised over the putative employee" because the parties "admittedly had a compensation agreement." *Id.* The facts in *Haavistola,* on the other hand, demanded a factual determination of whether the benefits received by the plaintiff and others were significant enough to make them employees rather than volunteers. *Id.* at 220, 221–22. Explaining the need for such a finding, the court cited *Graves v. Women's Professional Rodeo Ass'n,* 907 F.2d 71, 73 (8th Cir.1990): "Central to the meaning of [employee] is the idea of compensation *in exchange for* services." *Haavistola,* 6 F.3d at 220 (emphasis added). It is this simple statement more than any other that leads to the conclusion that Foote is not an employee of Foote, Inc.

Viewed most favorably to Vick, the evidence may suggest that something less than $9,000 was improperly taken out of the company by Foote.[3] But, whether or not this is so, nothing suggests that such "compensation" was in exchange for any services, allegedly or admittedly rendered by Foote. To the contrary, because Foote had the power to write company checks to himself whenever he desired, the same company money may have been paid to Foote even if he had never sold a tire, swept a floor, or answered a phone. This lack of a nexus between the benefits received by Foote and the services he performed distinguishes this case from any cited by the parties.

In *Garrett,* for example, the putative employee clearly received compensation in exchange for services provided. The question was whether the nature and degree of the putative employer's control rendered the putative employee an employee or a independent contractor. And, in *Haavistola,* the

putative employees clearly received certain benefits in exchange for their "volunteer" work. The question was whether the benefits given were substantial enough to transform the "volunteers" into employees. No such *quid pro quo* is apparent with the services Foote provides his business.

Vick relies upon *E.E.O.C. v. Pettegrove Truck Service, Inc.,* 716 F.Supp. 1430 (S.D.Fla.1989), in which the court considered the status of two members of the family which owned the defendant trucking company. The court reasoned, "Although neither of these persons draws a salary, as working for the company is their full time occupation, the court can reasonably assume that they derive some form of support from the operation of the company." *Id.* at 1433. Foote, in contrast, is retired from any full-time occupation and has sustaining income outside of his interest in the company. Moreover, it is not reasonable to assume that he receives compensation for those services he performs for Foote because, as a 60% owner of the business, he already has a strong interest in its success. *See Norman v. Levy,* 767 F.Supp. 1441, 1446 (N.D.Ill.1991) (finding that although he "engaged in day to day operation of the enterprise" and his efforts were "an integral part of the business," the company's founder was not an employee because his efforts "result[ed] from his status as an owner who wishes to increase the value of his property"). The record here establishes that Foote's services were provided by the owner to further the success of the company, not as the result of a secret "salary" supplied in consideration for what work Foote actually performed.

The economic reality of Foote's relationship with his company is that he is an owner, not an employee. *See id* ("Traditionally, one who is compensated solely through the increased value of his ownership share of an entity is an owner, rather than an employee; owners are not considered employees within the meaning of Title VII."). Furthermore, there is no evidence that anyone at Foote,

---

**3.** Plaintiff's exhibits show a total of about $13,-000 in payments to Foote. Of this amount, loan repayments account for $2,000 and contracting services account for $2,000. Of the remaining $9,000, a reasonable explanation is apparent for

much of it on the face of the evidence. However, in light of the court's analysis, it is not necessary individually to evaluate each receipt, check, and invoice.

Inc. can or does tell Foote when to be at work, what he should do, or anything else about the services he performs. The evidence reveals that the services he chooses to perform are performed in his capacity as the owner.

## CONCLUSION

Vick having failed to carry her burden to establish this court's jurisdiction over the Title VII claims, those claims are dismissed with prejudice. And, because the state law claims do not relate to the same case or controversy as the remaining Equal Pay Act claim, the court declines to exercise jurisdiction over them and, therefore, the state law claims are dismissed without prejudice.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record and to Nan S. Vick.

It is so ORDERED.