**Leslie D. FERRERO, Plaintiff,**

v.

**William J. HENDERSON, Postmaster General, United States Postal Service, Defendant.**

**No. C–3–00–462.**

United States District Court, S.D. Ohio, Western Division.

Oct. 8, 2002.

---

1. *See also United States v. Andrews,* 240 F.Supp.2d 636 (E.D.Mich.2003) (Cleland, J.).

Lee Hornberger, Cincinnati, OH, for plaintiff.

Pamela Stanek, Dayton, OH, for defendant.

EXPANDED OPINION AND ENTRY OVERRULING IN PART AND SUSTAINING IN PART DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES, PURSUANT TO FED. R. CIV. P. 12(B)(1) (DOC. # 6–1); DEFENDANT'S MOTION, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT (DOC. # 6–2) OVERRULED, WITHOUT PREJUDICE TO RENEWAL, FOLLOWING THE CLOSE OF DISCOVERY, ON ALL ISSUES NOT DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES; PLAINTIFF IS ORDERED TO SHOW CAUSE, WITHIN FOURTEEN (14) DAYS FROM DATE, WHY HER DISABILITY DISCRIMINATION CLAIM, BASED ON A MENTAL IMPAIRMENT, SHOULD NOT BE DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES; CONFERENCE CALL SET

RICE, Chief Judge.

Plaintiff Leslie Ferrero began working as a rural carrier associate for the United States Postal Service at its Cedarville Post Office on November 26, 1994.[1] On July 7, 1997, Ferrero fell during her route, injuring her shoulder and rib cage. Plaintiff alleges that, after notifying her supervisor, Postmaster Roy Conover ("Conover"), of her injury, she began to suffer discrimination.[2] Specifically, Plaintiff alleges that Conover harassed her, ridiculed her, required her to violate her medical restrictions, and conducted surveillance on her.[3]

1. The following facts are taken from Plaintiff's Complaint (Doc. # 1).

2. Plaintiff alleges that Mr. Conover has a custom and practice of discriminating and harassing disabled employees and employees who were sick or injured (Compl.¶ 8).

3. More specifically, Plaintiff alleges that the harassment included working her in violation of her medical restrictions, telling her "the doctor really didn't know," "therapy was a real joke," causing the other employees at the station to ignore and shun the plaintiff, throwing the plaintiff's processing form at

As a result of the harassment, Plaintiff suffered severe, significant acute anxiety disorder and depression, causing her to cease working altogether. Plaintiff has not been able to return to work at the Post Office since August 11, 1997.

On September 10, 1997, Plaintiff requested EEO counseling in order to complain about the discrimination and harassment. She alleges that the harassment continued after the counseling request. On December 19, 1997, Plaintiff filed a formal EEO complaint with the Postal Service. In that administrative complaint, Plaintiff alleged fifteen instances where Conover had discriminated against her and harassed her, due to her physical injury, or where she suffered the consequences of those actions.[4] Plaintiff alleges that the Postal Service has retaliated against her since she filed her formal complaint by continued surveillance and by inappropriate and cursory processing of her complaint.[5] On February .16, 1999, Conover sent Plaintiff a letter giving her four employment options: return to duty with no restrictions, disability retirement, resignation, or resignation with deferred annuity (Doc. # 6, Ex. 1). On April 15, 1999, Plaintiff was issued a removal for "Inability to Perform the Duties of Your Position." Effective May 29, 1999, Plaintiff's employment with the Postal Service was terminated. On September 20, 2000, Plaintiff brought this litigation against William J. Henderson, Postmaster General of the United States Postal Service, setting forth claims for disability discrimination, in violation of the Rehabilitation Act of 1973, and retaliation (Doc. # 1).

her, discussing with the Union Representative how to "get rid" of the plaintiff, telling the plaintiff it "doesn't pay to be hurt," calling the agency's workers' compensation office and "going ballistic" over plaintiff, telling plaintiff that "if anyone ever crosses me or does something I don't like, I always get even, right or wrong, I always get even, it's been that way for 35 years, that's why no one ever messes with me," and saying, concerning the plaintiff, "I got her didn't I." (1st A.Compl.¶ 26).

4. Plaintiff's fifteen allegations of discrimination were: (1) on July 7, 1997, Conover was hostile to her; (2) on July 8, 1997, Plaintiff was required to case mail, against medical restrictions; (3) on July 9, 1997, she was required to push a heavy cart and deliver mail; (4) on July 10, 1997, Conover made a joke about her attending physical therapy; (5) on July 11, 1997, she was required to perform work against her medical restrictions; (6) on July 12, 1997, Plaintiff was required to work against her medical restrictions and was followed on her route; (7) on July 14, 1997, Conover was rude to her and she performed work that violated her medical restrictions; (8) on July 18, 1997, Conover attempted to intimidate her by throwing medical papers in the air in disbelief; (9) on July 16, 1997, she was required to work in violation of her medical restrictions; (10) on July 17, 1997, she was required to work against medical restrictions and was telephoned late at night; (11) on July 18, 1997, other employees gave her a "cold shoulder"; (12) on July 19–24, 1997, Conover created a hostile work environment; (13) on July 25, 1997, Conover delayed issuing her paycheck, and made a comment that "it doesn't pay to be hurt"; (14) between July 28–August 11, 1997, Plaintiff became ill due to hostile work environment created by Conover; and (15) from August 12, 1997, to present, Plaintiff was under a doctor's care and unable to work, due to a hostile work environment.

5. On May 7, 2001, Plaintiff filed a First Amended Complaint (Doc. # 18). In that amended Complaint, Plaintiff adds allegations regarding her retaliation claim. In particular, she alleges that the retaliatory conduct also included refusing to take corrective action concerning Conover, refusing to interview witnesses to the allegation in the counseling request and formal complaint, refusing to accommodate the plaintiff or engage in an interactive process with her, and discharging her (id. ¶ 41). In addition, Plaintiff adds allegations, specifying her physical and mental impairments, as well as the major life activities which are impaired (id. ¶ 48–49).

On January 5, 2001, Defendant filed a Motion to Dismiss, pursuant to Fed. R.Civ.P. 12(b)(1), or, in the alternative, for Summary Judgment (Doc. # 6). On September 26, 2001, the Court issued an Opinion, sustaining in part and overruling in part that Motion. In this Expanded Opinion, the Court now sets forth its reasoning and the citations of authority for its earlier Opinion.

In its Motion, Defendant asserts five bases for the dismissal of Plaintiff's claims against it. *First,* it argues that Plaintiff's condition did not substantially impair a major life activity, and that it did not regard her as being disabled. *Second,* Defendant asserts that Plaintiff's retaliation claim must be dismissed, because Plaintiff did not engage in any prior EEO activity. *Third,* Defendant contends that Plaintiff's retaliation claim must be dismissed, because she failed to exhaust her administrative remedies. *Fourth,* Defendant asserts that Plaintiff's allegations regarding Defendant's conduct after her last day of work (August 11, 1997), including her removal, should be dismissed for failure to exhaust her administrative remedies. *Fifth,* Defendant argues that the allegations in Plaintiff's administrative complaint which were not accepted for investigation (allegations # 4, # 8, # 11–13) must be dismissed for failure to exhaust administrative remedies.

In her opposition memorandum, Plaintiff states that she needs to conduct discovery in order to defend against a summary judgment motion. Accordingly, as a means of analysis, the Court will *first* set forth the standards governing Defendant's motion. *Second,* the Court will address whether Plaintiff should have an opportunity for discovery before addressing the merits of Defendant's arguments. If necessary, the Court will then turn to merits of Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment (Doc. # 6).

## I. Standards Governing Defendant's Motion

### A. Standard For Rule 12(b)(1) Motions

■ With a motion to dismiss pursuant to Rule 12(b)(1), the moving party is challenging the court's subject matter jurisdiction. The plaintiff bears the burden of establishing, by a preponderance of the evidence, the existence of federal subject matter jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Rogers v. Stratton Indus., Inc.,* 798 F.2d 913, 915 (6th Cir.1986). When the party asserting federal jurisdiction finds its allegations challenged, it must submit evidence substantiating its claims. *Amen v. City of Dearborn,* 532 F.2d 554, 560 (6th Cir.1976). The district court has "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990) (citations omitted). The court may consider such evidence without turning the motion into one for summary judgment. *Id.*

■ Where the court elects to decide the jurisdictional issue on the written materials submitted, the plaintiff is required only to make a *prima facie* case of jurisdiction. *Armbruster v. Quinn,* 711 F.2d 1332, 1335 (6th Cir.1983). In other words, she must only "demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss." *Id.* (citations omitted). The Court must consider the pleadings and affidavits in the light most favorable to the plaintiff. *Id.*

B. *Standard For Summary Judgment Motions*

■ Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991)(The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.")(quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there .is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law, Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 486, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994)("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in favor of that party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the par-

ties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992)("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ....") Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## II. *Plaintiff's Request for Discovery/ Federal Rule of Civil Procedure 56(f)*

In both her Opposition Memorandum and her accompanying affidavit, Plaintiff states that she needs to conduct discovery in order to defend against a summary judgment motion. She specifically mentions that she needs to conduct discovery in order to support those retaliation claims which are based on an insufficient and improper EEO investigation.

Federal Rule of Civil Procedure 56(f) provides: "Should it appear from the affidavits of a party opposing the [summary judgment] motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." The Sixth Circuit has required strict compliance with this Rule, stating:

> The importance of complying with Rule 56(f) cannot be overemphasized. [I]f the [plaintiff] has not filed either a Rule 56(f) affidavit or a motion that gives the district court a chance to rule on the need for additional discovery, this court will not normally address whether there was adequate time for discovery.

*Cacevic v. City of Hazel Park,* 226 F.3d 483, 487–88 (6th Cir.2000), *quoting Plott v. General Motors Corp.,* 71 F.3d 1190, 1196 (6th Cir.1995). "Beyond the procedural requirement of filing an affidavit, Rule 56(f) has been interpreted as requiring that a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Cacevic,* 226 F.3d at 488.

In her affidavit, Plaintiff indicates that, in order for her to prepare a proper response to Defendant's Motion for Summary Judgment, she requires discovery, as permitted by the Federal Rules of Civil Procedure (Ferrero Decl. ¶ 2). She states that she "believe[s] that defendant's EEO office conducted an inappropriate and incomplete investigation. There has been no discovery in this case. It is my understanding that I am entitled to a trial *de novo* in District Court." (*Id.* ¶ 3). Plaintiff further states that Defendant has

failed to respond to any of her discovery requests (*id.* ¶ 4).

■ Herein, Defendant's Motion was filed in January of 2001, nine months prior to the discovery deadline of September 11, 2001. As of January 26, 2001, when Plaintiff filed her Opposition Memorandum, there is no evidence that Defendant had responded to her discovery requests, as Plaintiff indicates. With regard to her retaliation claim, based on the EEO investigation, the Court agrees with Plaintiff that she likely requires evidence in Defendant's possession to substantiate her claim. Accordingly, should her retaliation claim survive Defendant's Rule 12(b)(1) motion, Plaintiff will be allowed to conduct discovery, prior to responding to a motion for summary judgment on her retaliation claim.

■ With regard to Defendant's summary judgment argument that she was not disabled, Plaintiff has not asserted in her affidavit that she needs evidence from Defendant to prove that she had an actual disability. Moreover, it is likely that evidence that she had an actual disability is within her possession, and that she does not need to conduct discovery to acquire such evidence. Thus, Plaintiff should be able to respond to Defendant's argument that she was not disabled. The Court, therefore, will address herein Defendant's summary judgment arguments, regarding whether Plaintiff had an actual disability.

Plaintiff further asserts in her memorandum (but not in her affidavit) that she must conduct discovery to present evidence that Conover regarded her as disabled. This argument requires an analysis of Conover's state of mind, information which Plaintiff would likely *not* have without some discovery. Because Defendant has not responded to any of Plaintiff's discovery requests, the Court will allow Plaintiff to conduct discovery before addressing Defendant's motion for summary

judgment on this issue. In summary, the Court will permit Plaintiff to conduct discovery for her retaliation claim, to the extent that it is based on an insufficient and improper EEO investigation, provided that the Court has subject matter jurisdiction over such claim, and on the issue of whether Defendant regarded her as disabled. The Court, therefore, will not address the merits of those claims herein. The Court will address herein Defendant's Motion, to the extent that it is directed to whether Plaintiff has an actual disability, as well as to her additional retaliation claims.

### III. Merits of Defendant's Motion to Dismiss, Pursuant to Rule 12(b)(1), or, in the Alternative, for Summary Judgment

#### A. Plaintiff's Alleged Disability

■ In her Complaint, Plaintiff alleges that she suffered discrimination, on the basis of her disability, in violation of the Rehabilitation Act. To establish a *prima facie* case under that statute, Plaintiff must establish that: 1) she is disabled under the Act, 2) she is otherwise qualified for the job, with or without "reasonable accommodation," 3) she suffered an adverse employment action, 4) the employer knew, or had reason to know, of her disability, and 5) similarly situated persons not in the protected class were treated differently. *Back v. United States Postal Serv.,* 2000 WL 353543 (6th Cir. Mar.28, 2000); *see McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1081 (6th Cir.1994). The Rehabilitation Act defines a "individual with a disability" as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an

impairment; or (iii) is regarded as having such an impairment." 29 U.S.C. § 705(20)(B).

In its Motion, Defendant argues that Plaintiff's condition did not substantially impair a major life activity, and that it did not regard her as being disabled.[6] Focusing only on Plaintiff's physical injury to her left shoulder and rib cage (chest wall contusion and costochanditis), Defendant asserts that Plaintiff cannot demonstrate that her injury substantially limited a major life activity. In particular, it notes that she could continue to work, although in a more limited capacity. In addition, Defendant argues that it did not regard Plaintiff has having a disability that substantially limited a major life activity.

■ In her opposition memorandum, Plaintiff asserts that she was disabled, due to her anxiety disorder and depression (*i.e.*, a mental impairment), which developed due to work-related stress. In support of that assertion, Plaintiff has provided evidence that her mental impairment substantially limited her ability to sleep, think, and work. Moreover, in her Complaint, Plaintiff has alleged that the discrimination occurred after she stopped working on August 11, 1997, thus indicating that the mental impairment substantially affected her ability to work. Although Plaintiff does not specify whether the discrimination occurring after August 11th was due to her alleged physical injury or her alleged anxiety disorder and depression, construing the evidence most strongly in favor of Plaintiff, the non-moving party, this discrimination could arguably be based upon her alleged known mental impairment. Accordingly, there exists a genuine issue of material fact as to whether Plaintiff had a mental impairment and whether Defendant discriminated against her due to that mental impairment.

Accordingly, assuming that this Court has subject matter jurisdiction over this claim, Defendant is not entitled to summary judgment on Plaintiff's disability discrimination claim, to the extent it is based on her mental impairment.

■ The Court notes, however, that while Plaintiff has alleged a disability claim based on a mental impairment in her Complaint, her administrative complaint speaks only of a physical impairment (chest wall contusion and costochondritis) and discrimination based on that physical impairment. Thus, Plaintiff has not provided evidence that she has exhausted her administrative remedies with regard to a mental impairment. As discussed, *infra*, the exhaustion of administrative remedies is a necessary prerequisite to filing suit in federal court. *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir.1992). Although this requirement is subject to equitable principles of waiver, estoppel and equitable tolling, much like a statute of limitations, *see Zipes v. Trans World Airlines*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), Defendant clearly has not waived the exhaustion requirement generally, and there is no indication, at this time, that equitable principles might be applicable herein. Plaintiff, therefore, is ORDERED to show cause, within fourteen (14) days from date, why her disability claim, based on a mental impairment, should not be dismissed for failure to exhaust administrative remedies.

Turning to Plaintiff's disability discrimination claims based on a physical impairment, Plaintiff alleges in her Amended Complaint that she suffered shoulder strain, contusion, cartilage injury of the rib cage, and costochondritis as a result of the July 7, 1997, accident. She further alleges

---

**6.** Defendant's argument that Plaintiff's discrimination claim must be dismissed, because she is not disabled, will be treated as a summary judgment motion.

that the following activities are substantially limited: work, lifting, mobility, standing, thinking, interacting with others, interpersonal relationship, sleeping and related activities (1st A.Compl.¶ 49). The EEOC's illustrative but not exhaustive list of major life activities includes "sitting, standing, lifting, reaching," and "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." However, in order to be disabled, the medical condition causing the limitation of a major life activity must also be permanent, not temporary. *See, e.g., Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002); *Hein v. All America Plywood Co., Inc.,* 232 F.3d 482 (6th Cir.2000) (temporary hypertension did not "substantially limit" plaintiff's ability to work and therefore was not a disability under the Americans with Disabilities Act); *Vulcu v. Trionix Research Lab., Inc.,* 993 F.Supp. 623, 626–27 (N.D.Ohio 1998) (temporary back injury was not a disability because "it is well established that the [ADA] was never intended to apply to persons suffering from temporary conditions or injuries.").

 Herein, Plaintiff has failed to provide *any* evidence that her *physical* injury from the July 7th accident caused a permanent impairment, which significantly limited her major life activities. However, although Plaintiff has failed to provide evidence in support of her claim, *Defendant's* evidence shows that Plaintiff's lifting restrictions were approximately 0–10 pounds. Defendant's evidence further indicated that Plaintiff was still in pain at the time she stopped working, about six weeks after her injury. Although there is no evidence that Plaintiff was limited in the ability to lift *permanently,* there is no evidence that it was merely temporary either. Construing the evidence in a light most favorable to Plaintiff, a reasonable jury could conclude that she was substantially limited in her ability to lift. Accordingly, the Court concludes that there is a genuine issue of material fact as to the extent of Plaintiff's physical injury, and Defendant is not entitled to summary judgment, on the ground that Plaintiff was not physically disabled.

In summary, Defendant's Motion for Summary Judgment on Plaintiff's disability discrimination claim, on the ground that Plaintiff is not disabled, whether physically or mentally, is OVERRULED, subject to renewal at the completion of discovery.[7] With regard to the alleged mental impairment, Plaintiff is directed to show cause, within fourteen (14) days from date, why her claim should not be dismissed for failure to exhaust administrative remedies. In addition, because Plaintiff is entitled to conduct discovery on whether Defendant regarded her as disabled, Defendant's Motion for Summary Judgment on Plaintiff's claims, based on being regarded as physically and/or mentally disabled during July of 1997, is also OVERRULED, without prejudice to renewal after the completion of discovery.

B. *Exhaustion of Administrative Remedies, Pursuant to Rule12(b)(1)*

In addition to Plaintiff's possible failure to exhaust administrative remedies on her disability claim based on a mental impairment, Defendant asserts that Plaintiff has failed to exhaust her administrative remedies in three other respects. *First,* Defen-

---

**7.** Because the Court has overruled Defendant's Motion for Summary Judgment, on the ground that Plaintiff is not disabled, prior to the completion of discovery, the Court will permit the parties to address all issues not dismissed for failure to exhaust administrative remedies (as opposed to only the issue of her being regarded as disabled) in any subsequently filed motion for summary judgment.

dant contends she did not exhaust her claims for retaliation, because they were not included on her EEO complaint. *Second,* it asserts she did not exhaust her claims that occurred after August 11, 1997, because they also were not included in her EEO complaint. *Third,* Defendant argues she did not exhaust those issues in her administrative complaint that were dismissed by the Agency and withdrawn by her. Exhaustion of administrative remedies goes to subject matter jurisdiction. *See Strouss v. Michigan Dept. of Corrections,* 250 F.3d 336, 342 (6th Cir.2001)("It is well settled that federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge."); *Haithcock,* 958 F.2d at 675 (Exhaustion of administrative remedies, while not jurisdictional, is a necessary prerequisite to filing a discrimination suit in federal court.).

1. *Plaintiff's Retaliation Claim, Generally*

■ Defendant contends that Plaintiff's retaliation claim must be dismissed, in its entirety, for failure to exhaust her administrative remedies, because she did not include those allegations in her EEO complaint. The retaliation allegations in this lawsuit fall into three categories: surveillance, improper processing of her administrative complaint, and termination of her employment. None of these allegations was included in Plaintiff's EEO complaint. In order for these allegations to have been exhausted, without being included in her administrative complaint, the allegations of retaliation must "grow out of" that complaint. The Sixth Circuit has stated "that it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim

when it grows out of an administrative charge that is properly before the court." *Ang v. Procter & Gamble Co.,* 932 F.2d 540, 546–47 (6th Cir.1991), quoting *Gupta v. East Texas State Univ.,* 654 F.2d 411, 414 (5th Cir.1981). This is so where the retaliatory conduct is due to the filing of an EEOC charge. In such cases, to require plaintiffs to file an additional EEOC charge for the retaliation would cause inefficiency and unnecessary double filing. *Ang,* 932 F.2d at 547. However, where the claim for retaliation stems from conduct by the employer that occurred *prior to* filing an EEOC charge, "no unnecessary double filing is required by demanding that plaintiffs allege retaliation in the original complaint." *See id.*

■ Herein, Plaintiff alleged in her administrative complaint that Conover followed her while she was on her delivery route. Allegations that she had continued to suffer such surveillance as retaliation for filing the EEO complaint would grow out of that filing. Likewise, Conover was the individual who contacted her regarding the termination of her employment. The fact that she was discharged by Conover subsequent to filing an EEO claim could reasonably be interpreted as a retaliatory discharge, which would grow out of the EEO complaint. Thus, Plaintiff has exhausted her administrative remedies with regard to these two claims. Defendant's Motion to Dismiss Plaintiff's retaliation claims, based on surveillance and the termination of her employment, is OVERRULED.

■ Plaintiff's claim that her EEO complaint has not been properly investigated has *not* been exhausted. The investigation of her EEO complaint was performed by individuals other than Conover and her co-workers. No prior EEO claim was made against these individuals. Thus, the Court finds no basis to conclude that

Plaintiff's claim, based in an improper EEO investigation, grows out of her prior complaint. Defendant's Motion to Dismiss Plaintiff's retaliation claim, based on an improper EEO investigation, is SUSTAINED.

### 2. *Claims Based On Conduct Occurring After August 11, 1997*

■ Defendant asserts that Plaintiff's discrimination claims which relate to conduct that occurred after August 11, 1997, were not exhausted. In particular, it argues that, although Plaintiff's Complaint in this litigation alleges that the discrimination occurred after she stopped working and after her administrative complaint was filed, she does not specifically identify how Defendant discriminated against her. Defendant further argues that Plaintiff failed to file an administrative complaint regarding her termination. Plaintiff's administrative charge, which was filed on December 19, 1997, alleges discriminatory conduct in the workplace, and makes no mention of discriminatory conduct that occurred after she stopped working on August 11, 1997. In response, Plaintiff has essentially argued that an investigation into discriminatory conduct occurring outside of the workplace (such as the surveillance [8] and Conover's unwillingness to participate in mediation) after August 11, 1997, would grow out an investigation into workplace-based discrimination (which appears to have been, predominantly, requiring Plaintiff to violate her medical restrictions and harassing comments). The Court does not find this argument to be persuasive. Other than the surveillance, the alleged discrimination which occurred after August 11, 1997, is of a different type than, and occurred in a different setting from, the workplace discrimination

that led her to stop working. Thus, the Court concludes that an investigation into the alleged discriminatory conduct which occurred after August 11, 1997, would not grow out of an investigation into the alleged workplace-based discrimination. Plaintiff should have specified this alleged discriminatory conduct in her EEO charge. To the extent that she believes that she suffered discrimination, as opposed to retaliation, subsequent to filing her December 19, 1997, charge, Plaintiff was obligated to file an additional EEO complaint. Accordingly, to the extent that any discrimination occurred after she stopped working, these claims are not exhausted. However, as stated above, claims of retaliation based on this post-EEO charge conduct (*i.e.*, continued surveillance and her termination) have been exhausted.

### 3. *Issues Dismissed by the Agency*

On December 19, 1997, Plaintiff filed a formal EEO complaint with the Postal Service. In that administrative complaint, Plaintiff alleged fifteen instances where Conover discriminated against her and harassed her, due to her physical injury, or where she suffered the consequences of those actions. On April 17, 1998, the Postal Service EEO Office accepted issues # 1–3, # 5–7, # 9, # 10, # 14, and # 15 for investigation. It chose not to investigate issues # 4, # 8, and # 11–13. Defendant argues that Plaintiff did not exhaust those issues in her administrative complaint which were dismissed by the Agency and withdrawn by Plaintiff and, therefore, the claims herein which are based on those allegations must be dismissed.

---

**8.** Plaintiff indicates in her administrative charge that, on one occasion, she was followed while she was on her delivery route. With regard to Defendant's conduct after she stopped working, Plaintiff alleges that Conover repeatedly called her late at night and had others follow her.

Defendant's argument does not have merit. Although the Postal Service EEO Office chose not to accept some of Plaintiff's allegations for investigation, she presented them to the EEO. The letter from the EEO indicating partial dismissal of her complaint indicates that the dismissal constituted a final agency action, and that she had the right to sue. No more is required of Plaintiff in order to exhaust her administrative remedies for these dismissed issues. Thus, she satisfied her exhaustion requirements for issues # 4, # 8, and # 11–13. Defendant's Motion to Dismiss those claims is OVERRULED.

## C. Retaliation Prima Facie Case

Defendant seeks summary judgment on Plaintiff's retaliation claim, arguing that no prima facie case of retaliation can be made, because no EEO complaint was filed prior to the September 11, 1997, pre-complaint counseling and the December, 1997, formal complaint. Plaintiff's discharge and alleged surveillance occurred after the EEO complaint. Thus, construing the facts in the light most favorable to Plaintiff, it could be construed as a retaliatory discharge. Defendant's Motion for Summary Judgment on this claim is OVERRULED, without prejudice to renewal following the completion of discovery.[9]

In summary, Defendant's Motion to Dismiss Plaintiff's discrimination claims, which were articulated as issues # 4, # 8, and # 11–13 in her administrative charge,

for failure to exhaust administrative remedies, is OVERRULED. Its Motion to Dismiss Plaintiff's retaliation claims, based on surveillance and the termination of her employment, for failure to exhaust administrative remedies is likewise OVERRULED. Defendant's Motion to Dismiss, for failure to exhaust administrative remedies, is SUSTAINED with regard to Plaintiff's discrimination claims, to the extent that they are based on conduct which occurred after August 11, 1997, and her retaliation claim, based on an improper EEO investigation. Defendant's Motion for Summary Judgment on Plaintiff's discrimination claims, based on a physical or mental impairment, is OVERRULED in its entirety, without prejudice to renewal, following the completion of discovery, on all issues not dismissed for failure to exhaust administrative remedies. Its Motion for Summary Judgment on Plaintiff's remaining retaliation claims is also OVERRULED, without prejudice to renewal following the completion of discovery.

As a result of the ruling herein, Plaintiff's claims for disability (both physical and mental) discrimination, whether due to an actual disability or being regarded as disabled, based on Conover's conduct in the workplace between July 7, 1997, and August 11, 1997, REMAIN in their entirety (including the specific allegations that were dismissed by the EEO office). Plaintiff's retaliation claims, based on continued

---

**9.** Plaintiff did not exhaust her allegations that the agency retaliated by performing an improper investigation. Accordingly, the Court need not address Defendant's summary judgment arguments regarding those allegations. However, numerous courts have held that a complainant cannot state a retaliation claim, based on an improper EEO investigation, because an improper investigation does not constitute an adverse employment action. *See Jordan v. Summers,* 205 F.3d 337, 342 (7th Cir.2000); *Lowell v. Brown,* 2000 WL 521726 (N.D.Ill. Mar.2, 2000) (granting summary

judgment to government agency, because mishandling of complaint did not constitute an adverse employment action); *Gaynor v. Martin,* 77 F.Supp.2d 272, 279 (D.Conn.1999) (rejecting retaliation claim, because alleged slow processing of discrimination charge did not constitute adverse employment action). While there is no Sixth Circuit authority on point, these cases are well-reasoned and will be followed herein. Accordingly, even if the Court were to address it, Defendant would be entitled to summary judgment on that claim.

surveillance and the termination of her employment, also REMAIN.

Plaintiff's claims of disability discrimination, based on conduct that occurred after August 11, 1997, are DISMISSED for failure to exhaust administrative remedies. Plaintiff's retaliation claims, based on an improper EEO investigation of her administrative charge, were not exhausted and are likewise DISMISSED.

Plaintiff is ORDERED to show cause, within fourteen (14) days from date, why her disability discrimination claim, based on a mental impairment, should not be dismissed for failure to exhaust administrative remedies.

Counsel of record should note that a telephone conference call will be had on Tuesday, October 15, 2002, at 8:20 a.m., to reset the trial date and other dates leading to the resolution of this litigation.